# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1579

_____

United States of America,       *
                                *

            Appellee,           *

                                *   Appeal from the United States

       v.                       *   District Court for the

                                *   District of North Dakota.

Randy Gerald Davis,         *

                                *

           Appellant.         *

_____

Submitted:  October 12, 2000
        Filed:    January 24, 2001

_____

Before BYE, BRIGHT, and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

A jury convicted Randy Gerald Davis of assault resulting in serious bodily injury. Davis appeals, arguing that the district court[1] erred in instructing the jury on the intent required to convict. Davis also contends that the district court erred by refusing to provide the jury with a self-defense instruction. Finding no reversible error, we affirm.

---

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

## I.

On the night of February 16, 1999, Davis and his girlfriend, Lori Demery Malaterre, visited the Cross-Roads Bar, which is located near Belcourt, North Dakota. Dana Poitra, who had previously dated Malaterre, was also at the Cross-Roads that night. A barroom brawl ensued, during which Davis struck Poitra in the head with a pool cue, crushing Poitra's skull.

A grand jury indicted Davis on two counts: assault with a dangerous weapon with intent to do bodily harm, in violation of 18 U.S.C. § 113(a)(3) (Count I); and assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6) (Count II). The prosecution brought its case against Davis in federal court because Davis is a Native American and the alleged assault occurred in Indian country. See 18 U.S.C. § 1153.

At trial, the government produced a series of witnesses describing the events at the Cross-Roads on the night in question. The witnesses essentially testified that Davis, unprovoked by Poitra, struck him in the back of the head with a pool cue. Poitra testified that he had previously had a liaison with Malaterre, and that he rebuffed what he perceived to be Malaterre's flirtations at the bar. Poitra, the bartender, and six patrons all testified that no one attacked Davis. At least seven witnesses testified that they saw Davis strike Poitra with the pool cue. Two witnesses testified that after Davis struck Poitra with the pool cue, Davis attempted to strike him again until the bartender intervened.

Davis took the stand in his defense and testified that he was playing pool when an unknown assailant came from behind and grabbed his legs. Davis claimed that he instinctively reacted by thrusting his pool cue backward to escape the clutches of his unknown assailant.

Following the two-day jury trial, the jury convicted Davis on Count II but could not agree to a verdict on Count I. The district court sentenced Davis to forty-eight months imprisonment.

## II.

Davis first argues that the district court failed to properly instruct the jury about the intent required to find him guilty on Count II. Assault resulting in serious bodily injury requires a finding of general intent. See United States v. Big Crow, 728 F.2d 974, 975 n.1 (8th Cir. 1984). Because Davis failed to object to the Count II instructions or verdict form, we review for plain error. See United States v. McNeil, 184 F.3d 770, 777 (8th Cir. 1999).[2]

Davis's contention that the district court failed to instruct the jury about the intent required for conviction under Count II is based on the interplay between the jury instructions and verdict form. The verdict form stated:

1.    We the jury find the Defendant, Randy Gerald Davis,
      ____ Not Guilty   ____ Guilty
of the crime of assault of Dana Poitra with a dangerous weapon, with intent to do bodily harm, on or about February 16, 1999 as set forth in count one.

_____

[2]Davis claims that the district court did not give him a chance to review the verdict form. The record, however, suggests that the court attached the verdict form to the jury instructions, thereby providing Davis with an opportunity to examine the verdict form. Regardless, jury instructions are read as a whole, see United States v. Lawson, 173 F.3d 666, 671 (8th Cir. 1999), and Davis concedes that he had an opportunity to review the instructions themselves.

2.    We the jury find the Defendant, Randy Gerald Davis,
_____ Not Guilty    _____ Guilty
of the offense of assault resulting in serious bodily injury, on or about February 16, 1999 as set forth in, count two.

The Count II jury instructions provided:

Count Two (assault resulting in serious bodily injury)

For the defendant to be found guilty of the offense of assault resulting in serious bodily injury as set forth in count two, the government must prove each of the following four essential elements beyond a reasonable doubt:

one, Davis assaulted Dana Poitra;
two, as a result, Dana Poitra suffered serious bodily injury;
three, Davis is an Indian (Native American); and
four, the alleged offense occurred within Indian Country.

Davis notes that the verdict form referenced the intent required to convict him of Count I, but did not mention the necessary intent in Count II. Davis also points out that the Count II verdict form referred the jury to the elements of the offense as set forth in Count II, which also fails to mention the necessary intent for conviction.

We believe that the district court properly instructed the jury about the intent required to convict Davis of Count II. Jury instructions are to be read as a whole. See Lawson, 173 F.3d at 671. Proof of assault resulting in serious bodily injury does not require specific intent to cause serious bodily injury. See Big Crow, 728 F.2d at 975 n.1. Instead, it merely requires that the defendant assault the victim and that the assault happen to result in serious bodily injury. See id. In this case, to determine what qualified as an assault, the jury had to refer to the court's assault definition. The court defined "assault" as "any intentional and voluntary attempt or threat to do injury to the

-4-

person of another" and stated that "[a]n <u>intentional</u> striking is an assault." (emphasis added). The court also provided an instruction entitled "<u>PROOF OF INTENT OR KNOWLEDGE</u>," which discussed how the jury could resolve the intent issue. Additionally, the court repeatedly reminded the jury that all instructions must be followed.

Nevertheless, Davis contends that several jury questions asked during deliberations demonstrate that the Count II jury instructions were confusing in their definition of intent. While deliberating, the jury asked for a clarification of the meaning of "intent." The court replied: "We cannot read minds, so we determine someone's intent - or state of mind - by looking at what he or she did, and the usual or probable result of that action." The jury then asked: "If we find that Randy intentionally hit Dana with the pool stick and did commit assault is it necessary for it to be proved to us that Randy's intent was to 'crush his skull' to find him guilty of Count #1 also?" The court instructed the jury to "re-read [the instructions,] which require an intent to 'do bodily harm.'" Finally, the jury asked:

> What do we do if we're all in agreement that Randy is guilty of Count #2 but are not sure that Randy 'intended to do bodily harm' to Poitra – can we just find him guilty of Count #2? Or if we feel he is guilty of Count #2 is he automatically guilty of #1 since the end result of swinging stick caused serious bodily injury whether intended or not??

The court responded: "Count 2 does not require that a defendant intend to cause bodily harm. It requires you to find that a defendant intentionally hit someone and that a serious bodily injury occurred as a result of the blow. So – 1. yes 2. no."

In arguing that the district court's instructions were confusing, Davis places particular emphasis on the court's response to the jury's final question. Davis notes that the court's reply initially states that "Count 2 does not require that a defendant intend to cause bodily harm," but then reminds the jury that it must find that Davis

intentionally hit Poitra. Therefore, Davis concludes, the court allowed the jury to find him guilty without finding the requisite intent. We disagree. The court's answer to the final jury question simply pointed out that to find Davis guilty on Count II, the jury had to find that he intended to hit Poitra, but did not need to find that he intended to cause bodily harm. This is a correct statement of the law. Therefore, the district court did not err in instructing the jury about the required intent to convict Davis of assault resulting in serious bodily injury.

Davis's second argument is that the district court erred in refusing to provide the jury with a self-defense instruction. The court did not instruct the jury on self-defense because the court characterized Davis's testimony as reflecting accidental infliction of injury rather than self-defense. A self-defense instruction must be given if there is sufficient evidence for a jury to rationally sustain the defense. See Hall v. United States, 46 F.3d 855, 857 (8th Cir. 1995). However, a mere scintilla of evidence is insufficient to require the instruction. See id. To prevail on a self-defense claim, Davis needed to produce enough evidence to convince the jury that he used that amount of force that he reasonably believed was necessary to protect himself from Poitra's alleged attack. See id. We generally review a district court's refusal to provide a requested instruction for abuse of discretion, but we review de novo whether a defendant produced enough evidence to warrant an instruction on an affirmative defense, such as Davis's self-defense claim here. See United States v. Scout, 112 F.3d 955, 960 (8th Cir. 1997).

We doubt that Davis produced sufficient evidence for a jury to rationally sustain a self-defense claim. See, e.g., Baker v. Montgomery, 811 F.2d 557, 559-61 (11th Cir. 1987) (holding that the trial court did not err in refusing to provide the jury with a self-defense instruction when the defendant's claim of self-defense "was contradictory to all other evidence and testimony before the jury"). Nevertheless, even if the district court erred in refusing to provide the jury with a self-defense instruction, any error was harmless. A district court's refusal to provide a requested instruction warrants reversal

only if the refusal prejudices the defendant. See United States v. Whitehead, 176 F.3d 1030, 1037 (8th Cir. 1999). The only evidence Davis presented was his own testimony that Poitra grabbed him by the legs, causing him to instinctively jab his pool cue backward "just to try to get loose." However, the evidence that Davis committed assault resulting in serious bodily harm was overwhelming. Poitra testified that he had previously had a liaison with Malaterre, Davis's girlfriend, and that he rebuffed what he perceived to be her flirtations on the night in question. No fewer than eight witnesses testified that Davis struck Poitra without provocation. Two witnesses testified that after Davis struck Poitra with the pool cue, Davis attempted to strike him again until the bartender intervened. Finally, we note our disbelief that Davis could have crushed a man's skull by simply jabbing a pool cue backward. Therefore, even if the district court should have given the self-defense instruction, any such error did not prejudice Davis and is thus harmless.

## III.

The district court adequately instructed the jury about the intent needed to convict Davis of assault resulting in serious bodily harm and did not commit reversible error in refusing to provide the jury with a self-defense instruction. Therefore, Davis's conviction is AFFIRMED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.