# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1710

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Rudolph Leopold Olguin, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 11, 2005
Filed: November 2, 2005

_____

Before ARNOLD, BOWMAN, and MURPHY, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Rudolph Olguin was convicted by a jury of distributing a controlled substance, Oxycodone, in violation of 21 U.S.C. § 841(a)(1) (2000). He appeals his conviction, arguing that the District Court[1] erred in instructing the jury and in failing to grant his motion for acquittal. We affirm.

Olguin suffers from neuropathy and takes doctor-prescribed Oxycodone to control his pain. On December 13, 2003, Olguin gave an Oxycodone pill to Donald

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

White Thunder, who had come to a small party at Olguin's apartment. After crushing the pill and injecting it into his body, White Thunder fell unconscious. The paramedics were called, but White Thunder later died. An autopsy revealed that White Thunder's blood-alcohol content was .277% and that White Thunder had an elevated level of Oxycodone in his blood.[2]

To prove that Olguin illegally distributed Oxycodone as charged in the indictment, the parties agree that the government was required to establish that (1) Olguin knowingly and intentionally distributed Oxycodone to White Thunder on or about December 13, 2003, and (2) Olguin knew at the time of distribution that Oxycodone was a controlled substance. See Indictment at 1; 21 U.S.C. § 841(a)(1) (2000); Eighth Circuit Manual of Model Jury Instructions (Criminal), Instruction 6.21.841B (2003).

As his first ground for appeal, Olguin asserts that the instructions given by the District Court "confused the jury with respect to their duty to determine whether the government proved beyond a reasonable doubt that Olguin knew he had given White Thunder a controlled substance." Appellant's Br. at 10. Because Olguin did not object to the instructions at trial, we review the challenged instructions for plain error.[3] See United States v. Davis, 237 F.3d 942, 944 (8th Cir. 2001). In applying this standard, we read the instructions as a whole to determine whether they fairly and adequately stated the relevant law. Id.

---

[2]White Thunder's death was attributed to cardiomeglia, an abnormal enlargement of the heart.

[3]Pursuant to the plain error standard, we will not correct an error not raised at trial unless there is (1) error, (2) that is plain, (3) that affects substantial rights, and (4) that affects the fairness and integrity of judicial proceedings. Johnson v. United States, 520 U.S. 461, 466–67 (1997).

Olguin contends that the interplay between Instruction No. 9 and Instruction No. 11 constituted plain error. Instruction No. 9 read:

> The crime of distribution of a controlled substance, as charged in the indictment, has the following essential elements:
>
> 1. On or about December 13, 2003, the defendant knowingly or intentionally distributed Oxycodone to Donald White Thunder.
>
> 2. At the time of the distribution, the defendant knew it was a controlled substance.
>
> For you to find defendant guilty of the crime charged, the government must prove all of these essential elements beyond a reasonable doubt; otherwise you must find defendant not guilty of this crime.

Instruction No. 11 read:

> You are instructed, as a matter of law, that Oxycodone is a controlled substance.
>
> It is solely for you the jury, however, to determine whether or not the government has proved beyond a reasonable doubt that the defendant distributed a substance, which was Oxycodone.

Olguin avers that Instruction No. 9 correctly stated the elements of the offense, but that the first paragraph of Instruction No. 11 then obviated the requirement that the jury determine whether Olguin knew that Oxycodone was a controlled substance. We disagree. Instruction No. 11 simply informed the jury of the fact that Oxycodone is legally categorized as a controlled substance. Instruction No. 11 was silent as to the knowledge element of the offense; it certainly did not contradict the requirement of Instruction No. 9 that the jury find that Olguin knew that he gave White Thunder

-3-

a controlled substance. Reading the instructions as a whole, we conclude that the two provisions fairly state the law and coexist in harmony.

Olguin also challenges the second paragraph of Instruction No. 11. He argues that, while it informed the jurors that they must determine whether Olguin distributed Oxycodone, it failed to repeat Instruction No. 9's directive that the jury find that Olguin did so "knowingly or intentionally." Olguin asserts that this omission misled the jury. Again, we conclude that Instruction No. 11's failure to repeat the elements of the offense set forth in Instruction No. 9 did nothing to nullify the jury's duty with respect to those elements. There was simply no need for Instruction No. 11 to superfluously repeat the guidance provided by Instruction No. 9. Reading the two provisions together, we find them neither contradictory nor confusing.

The District Court instructed the jury to consider the instructions as a whole and provided the jury with a written copy of the instructions to facilitate their comprehension. We conclude that the jurors were adequately informed that to convict Olguin they had to determine that the government proved both elements of the offense, as set forth in Instruction No. 9, beyond a reasonable doubt. We find no error, let alone plain error, in the District Court's instructions.

As his second ground for appeal, Olguin asserts that the District Court erred in denying his motion for acquittal because the government failed to offer sufficient evidence to establish that he distributed Oxycodone to White Thunder. Olguin further asserts, apparently in the alternative, that the government presented no evidence showing that Olguin knew that the Oxycodone pill he gave to White Thunder was a controlled substance. We review the sufficiency of the evidence necessary to sustain a conviction de novo, viewing all evidence in the light most favorable to the government and accepting all reasonable inferences that could support the jury's verdict. United States v. Chapman, 356 F.3d 843, 847 (8th Cir. 2004). We reverse only if no reasonable fact-finder could have found Olguin guilty

beyond a reasonable doubt.  United States v. Brown, 346 F.3d 808, 813 (8th Cir. 2003).

The evidence introduced at trial was more than sufficient to support Olguin's distribution conviction.  An agent for the South Dakota Division of Criminal Investigation ("DCI") testified that he interviewed Olguin after White Thunder's death.  A recording of the interview was played for the jury.  During the interview, Olguin admitted that he gave White Thunder one pill of Oxycodone, which Olguin had gotten via a doctor's prescription. Olguin stated that he knew White Thunder planned to inject the drug with a syringe and, indeed, that White Thunder went into the bathroom and "shot himself up" with the Oxycodone.  Tr. of DCI Interview at 5.[4] Olguin's admissions during the DCI interview, alone, support the jury's finding of guilt.  Olguin unambiguously acknowledged knowingly giving an Oxycodone pill to White Thunder on December 13, 2003—the first element of the crime.[5]  Olguin further acknowledged that he had obtained the Oxycodone by a doctor's prescription, making it reasonable for the jury to infer that Olguin knew Oxycodone was a controlled substance—the second element of the crime.

---

[4]The recording of the DCI interview played during trial was not transcribed by the court reporter.  We therefore cite the transcript of the interview, which was admitted at trial for demonstrative purposes and is included in the appendix to Olguin's brief.

[5]Olguin argues that autopsy results showing that the level of Oxycodone in White Thunder's blood was greater than the level that would have resulted from ingesting only one pill "belied any notion that the Oxycodone taken by White Thunder was distributed to him by Olguin."  Appellant's Br. at 15.  Whether the Oxycodone found in White Thunder's blood was that distributed by Olguin, however, is not relevant to Olguin's conviction.  The jury simply was required to find beyond a reasonable doubt that Olguin knowingly distributed Oxycodone to White Thunder; it was not required to find that White Thunder then took the additional step of ingesting the distributed Oxycodone.

The other evidence presented by the government simply buttressed the case for conviction. For example, the government demonstrated that Olguin filled three prescriptions for Oxycodone in the five days preceding White Thunder's death. From this evidence a jury could reasonably infer that Olguin had knowledge of the controlled nature of Oxycodone and its intended medical use. In addition, the officer who responded to the report that White Thunder was unconscious outside of Olguin's apartment testified that Olguin "acted like he had no idea what was going on" and denied even knowing White Thunder. Trial Tr. at 17. This evidence of Olguin's deceptive behavior could further convince a reasonable juror of Olguin's guilt. See United States v. Clark, 45 F.3d 1247, 1250–51 (8th Cir. 1995).

Viewing the evidence in the light most favorable to the government, we conclude that the jury's verdict is amply supported. The District Court did not err in denying Olguin's motion for acquittal.

Olguin's conviction is affirmed.

_____