# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2431

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Sam Opare-Addo, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 8, 2007
Filed: May 22, 2007

_____

Before LOKEN, Chief Judge, BYE and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Sam Opare-Addo appeals his conviction and sentence imposed after he was found guilty by a jury of eight counts of violating, or aiding and abetting the violation of, the Clean Water Act. See 33 U.S.C. § 1319(c)(2)(A); 18 U.S.C. § 2. The district court[1] sentenced Opare-Addo to twenty-six months imprisonment and one year of supervised release. On appeal, Opare-Addo argues that there was insufficient evidence to convict him of the eight counts in light of the jury's acquittal on a related count. We affirm.

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

I.

Opare-Addo, an American citizen originally from Guyana, possesses degrees in chemistry from both a university in Guyana and the University of Minnesota. In January 2003, Opare-Addo began working for Prime Plating, Inc., a small, family-owned metal plating business in Maple Grove, Minnesota. Opare-Addo had previous experience in the metal plating industry. Before Opare-Addo began working, Scott Hanson had purchased Prime Plating from his father, Arlyn Hanson, however Arlyn Hanson maintained limited involvement in the company.

The process of metal plating creates hazardous liquid wastes, which must be disposed of by either storing the wastes for later disposal by a third party or by pretreating the waste before discharging it into the sewers. Prime Plating had obtained a permit from the Metropolitan Council of Environmental Services (MCES), which allowed Prime Plating to discharge wastes into the sewer system after those wastes had been pretreated so that the wastes would not damage the public sewer system.

In April 2003, MCES and other environmental agencies began investigating whether Prime Plating was adhering to permit requirements concerning the pretreatment of the waste. This investigation involved numerous visits to Prime Plating from April through July 2003, and culminated in undercover testing of the waste water from June 23 through June 27 and June 30 through July 2, 2003. The test results revealed significant violations of Prime Plating's permit.

Based on these test results, the government obtained a search warrant which was executed on July 14, 2003. The search revealed that Prime Plating was using hoses to bypass an inoperable pretreatment system and discharge waste directly into the sewer system. An indictment was brought against Opare-Addo, Scott Hanson, Arlyn Hanson, and Prime Plating, Inc. After a consolidated jury trial, Opare-Addo was convicted on eight counts (Counts 2-9) of knowingly violating or aiding and

abetting the violation of the Clean Water Act by discharging untreated liquid industrial wastes directly into the public sewer system based on the results from the eight days of testing conducted in June and July 2003. Opare-Addo was acquitted on several other counts, including one count (Count 10) of knowingly introducing or aiding and abetting the introduction into the sewers of a pollutant which he knew or reasonably should have known could cause personal injury and property damage, in violation of 33 U.S.C. § 1319(c)(2)(B).

## II.

In his sole issue on appeal, Opare-Addo contends that the government failed to present sufficient evidence to support his conviction on Counts 2-9. "'We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict.'" United States v. Hamilton, 332 F.3d 1144, 1148 (8th Cir. 2003) (quoting United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003)). Under this strict standard, we will reverse only where no reasonable jury could have found the accused guilty. United States v. Sanders, 341 F.3d 809, 815 (8th Cir. 2003), cert. denied, 540 U.S. 1227 (2004).

Opare-Addo argues the jury could not have found him guilty of Counts 2-9 under an aiding and abetting theory because they did not also find him guilty of Count 10, which included an aiding and abetting option. Thus, he contends, the jury must have determined that he personally committed the acts of discharging described in Counts 2-9. Because the government failed to present evidence from which the jury could have found that Opare-Addo personally discharged the pollutants on the specific dates alleged in Counts 2-9, Opare-Addo submits that his convictions are not supported by sufficient evidence and must be reversed.

The government responds that the verdicts were not inconsistent because Count 10 included an element not found in Counts 2-9.[2] Further, the government asserts the evidence supports culpability based upon personal involvement, upon aiding and abetting, and upon Opare-Addo's "'causing' the discharges" because Opare-Addo (1) worked as an active manager in Prime Plating, (2) was responsible for environmental compliance and installation of a pretreatment system, and (3) directed employees on dates before and after those alleged in the indictment to dump untreated waste into the public sewer system.

We reject Opare-Addo's assertion that the jury's acquittal on Count 10 necessarily implies that the convictions on Counts 2-9 could not have been based on a theory of aiding and abetting. In comparison to Counts 2-9, Count 10 included an additional element of knowledge that the pollutant could cause personal injury or property damage. Opare-Addo concludes that the jury could not have acquitted him based on a failure of proof as to that element because he has an extensive educational and occupational background in chemistry and metal plating. Therefore, Opare-Addo contends the jury must have found that he personally discharged the pollutants as alleged in Counts 2-9, otherwise–had the basis for the conviction been aiding and abetting–he would have also been found guilty on Count 10. Opare-Addo argues with aiding and abetting eliminated as a ground for conviction of Counts 2-9, the government failed to introduce evidence that Opare-Addo personally discharged the pollutants on the specified dates, and thus reversal is warranted.

---

[2] In his reply brief, Opare-Addo objects to the government's characterization of his argument as one of inconsistent verdicts. Rather, he asserts that "while the verdict is strange and inconsistent," the guilty verdicts on Counts 2-9 cannot be sustained because (1) the government failed to introduce evidence of Opare-Addo's participation at the time of the offense and (2) the proof fails even under an aiding and abetting analysis.

We have previously held, when considering what are characterized as inconsistent verdicts, that we only ask whether the government presented sufficient evidence to support the conviction. Nesbitt v. Hopkins, 86 F.3d 118, 121 (8th Cir.), cert. denied, 519 U.S. 1016 (1996). We are reluctant to delve into the minds of the jurors to determine the reasons for apparently inconsistent verdicts. Inconsistent verdicts may result from an inclination to be merciful or confusion on the part of the jury. See United States v. Powell, 469 U.S. 57, 65 (1984) ("It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense."); Dunn v. United States, 284 U.S. 390, 394 (1932) ("That the verdict may have been the result of compromise, or of mistake on the part of the jury, is possible."). Any attempt to explain why Opare-Addo was convicted of Counts 2-9 but acquitted on Count 10 "would be based on either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." Powell, 469 U.S. at 66. We are left only with a question of whether the government presented sufficient evidence to support the counts of conviction.

To obtain convictions on Counts 2-9, which alleged violations under 33 U.S.C. § 1319(c)(2)(A), the government was required to prove that (1) on or about June 23 through June 27 (Counts 2-6) and June 30 through July 2, 2003 (Counts 7-9), Opare-Addo discharged a pollutant or caused a pollutant to be discharged, (2) the pollutant was discharged into a sewer system or publicly-owned treatment works, (3) the discharge violated an applicable requirement which was (4) part of an approved treatment program, and (5) Opare-Addo acted knowingly.

In order to convict Opare-Addo of aiding and abetting the violation of the Clean Water Act pursuant to 18 U.S.C. § 2, the government had to prove more than Opare-Addo's "mere association with, and knowledge of the activities" of others at Prime Plating, rather the government had to show that Opare-Addo "associated himself with the [illegal discharges], participated in it 'as something [he] wished to bring about,'

and acted in such a way as to ensure its success." United States v. Sinskey, 119 F.3d 712, 718 (8th Cir. 1997) (citations omitted). In other words, the government must prove that Opare-Addo encouraged the perpetrators in order for him to be convicted of aiding and abetting the violation of the Clean Water Act. See United States v. Hernandez, 986 F.2d 234, 238 (8th Cir. 1993). When considering a charge of aiding and abetting, "[c]ircumstantial evidence is 'intrinsically as probative as direct evidence' and may be the sole support for a conviction." United States v. McCrady, 774 F.2d 868, 874 (8th Cir. 1985) (quoting United States v. Two Eagle, 633 F.2d 93, 97 (8th Cir. 1980)).

After carefully reviewing the record, construed in the light most favorable to the verdict, we believe that the evidence presented by the government against Opare-Addo is such that a reasonable juror could have convicted him of aiding and abetting the discharge of the pollutants as charged in Counts 2-9. Several witnesses testified that Opare-Addo presented himself as a supervisor or manager at Prime Plating. He was the Prime Plating employee often sought out by MCES officials and to whom other employees, including owner Scott Hanson, would refer those officials with regard to issues of environmental compliance.

Terry Bergeron, who began working as a zinc barrel plater in June 2002, testified that in May 2003, approximately one month prior to the beginning of the June and July testing of Prime Plating's waste water, Opare-Addo had ordered Bergeron to discharge untreated waste directly into the sewer system. When Bergeron refused and informed Opare-Addo that he had contacted the Environmental Protection Agency and learned that he was not supposed to be discharging untreated waste, Opare-Addo became upset and "stomped out of the building." Opare-Addo soon returned with a marijuana pipe that Bergeron had left on a desk at Prime Plating and told Bergeron that he was fired for smoking marijuana.

Jimmy Meissner, the shop foreman, testified that Opare-Addo said he had fired Bergeron because Bergeron had taken photos of the drain hoses. Around one month after Bergeron's termination, Opare-Addo directed Meissner to search the sewer manholes around Prime Plating to "see if there was something hanging out" of them. Although Meissner did not know exactly what he was searching for, Opare-Addo "just told [him] to look for something that was hanging out of the manhole covers." Opare-Addo told Meissner that he was also planning to examine the sewers around Prime Plating. Meissner testified that, when MCES did on-site testing of Prime Plating in April 2003, Opare-Addo added a dye to the waste chemicals to make the chemicals look like clean water and directed another employee to add fresh water to a trough where the testing equipment had been installed.

Jose Leandro Cano-Marquez, an illegal alien hired by Opare-Addo to work at Prime Plating, testified in a deposition, which was read at trial, that Opare-Addo told him to discharge the waste water from the metal plating lines and that only Opare-Addo had so instructed him. Cano-Marquez said that on the Friday just prior to the execution of the search warrant, Opare-Addo had instructed him to drain a tank of dirty waste water directly into the sewer.

This evidence demonstrates that Opare-Addo was more than a passive observer of the illegal discharges. Opare-Addo admitted to investigators that he knew about the illegal discharges, but he claimed that he had voiced objections to them. The evidence presented at trial, however, supports the conclusion that Opare-Addo was actively involved in directing the discharges and had taken steps to prevent MCES's discovery of the illegal activities. Accepting as credible the government's witnesses, a reasonable jury could find that Opare-Addo aided and abetted the illegal discharges charged in Counts 2-9, in light of Opare-Addo's environmental compliance responsibilities at Prime Plating and his instructions to employees to make illegal discharges. See United States v. Hill, 249 F.3d 707, 714 (8th Cir. 2001) ("Witness

credibility is within the province of the jury, which we are not allowed to review.")
(citing Burks v. United States, 437 U.S. 1, 16-17 (1978)).

## III.

For the foregoing reasons, we affirm the conviction.

_____