# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3494

_____

United States of America,

                 Plaintiff-Appellee,

         v.

Ramon Hernandez-Pacheco,

                 Defendant-Appellant.

\* Appeal from the United States
\* District Court for the Western
\* District of Missouri.
\*
\* [UNPUBLISHED]
\*

_____

Submitted: June 8, 2009
Filed: June 24, 2009

_____

Before BYE, HANSEN, and BENTON, Circuit Judges.

_____

PER CURIAM.

     Ramon Hernandez-Pacheco appeals his conviction following a jury trial and the district court's[1] sentence of 151 months imprisonment for conspiracy to distribute in excess of 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. We affirm.

_____

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

# I

On July 27, 2006, officers with the Southwest Missouri Drug Task Force recovered one ounce of methamphetamine, scales, plastic baggies, and a methamphetamine pipe at the home of Rhonda Johnson in Pierce City, Missouri. Ms. Johnson informed the officers she had purchased the methamphetamine from Jose Serrano-Rodriguez, who she referred to as "Kiko." The officers had Ms. Johnson arrange another purchase from Serrano-Rodriguez. After the arranged purchase, police officers followed Serrano-Rodriguez to a gas station. The officers approached Serrano-Rodriguez, and he consented to a search of his vehicle. The officers found one ounce of methamphetamine in the floorboard, and a search of Serrano-Rodriguez and his sister, who was a passenger in the vehicle, revealed just under $14,000 in cash.

Serrano-Rodriguez identified his source of the methamphetamine as an individual named "Pelon," who lived nearby and had three pounds of methamphetamine hidden in the rafters of his garage. Serrano-Rodriguez directed the police officers to a house owned by Ramon Hernandez-Pacheco, and he stated he watched Hernandez-Pacheco remove packages of methamphetamine from a hidden compartment located on the west side of the garage behind a piece of wood. Serrano-Rodriguez told the officers he obtained between five and eight pounds of methamphetamine from Hernandez-Pacheco on a regular basis. One of the officers then spoke with Immigration and Customs Enforcement Special Agent Greg Paris, who stated he had received information about a subject known as "Pelon" who lives in the area and travels to Texas approximately every 15 days to obtain multiple pounds of methamphetamine.[2] Based on this information, the police officers obtained a search warrant for Hernandez-Pacheco's house and garage.

---

[2]It was later discovered that the "Pelon" identified by Agent Paris was not Hernandez-Pacheco.

The officers executed the search warrant and found approximately three pounds of methamphetamine hidden in the rafters of Hernandez-Pacheco's garage in the location described by Serrano-Rodriguez. The officers also found digital scales and plastic baggies, which Serrano-Rodriguez admitted belonged to him. The officers found no drugs inside the house, but they did find $19,000 in cash in a jacket in the front closet, $4,000 in a cabinet in the kitchen, and $900 dollars in the bathroom. Officers also found a handwritten note on which several names and large amounts of currency were written. Among the names listed was "Kiko." At trial, officers testified the note appeared to be a drug ledger.

Hernandez-Pacheco arrived home during the search of his house. As he was arrested, Hernandez-Pacheco asked Agent Paris what he had done wrong. Agent Paris informed Hernandez-Pacheco they had found three pounds of methamphetamine, to which Hernandez-Pacheco immediately responded that he rented out his garage. When Agent Paris noted that he had not mentioned where the drugs were found, Hernandez-Pacheco sighed and dropped his head. Hernandez-Pacheco also told the officers that, while the jacket in the front closet was his, the money inside it was not his money. Later that evening, Agent Paris again spoke to Hernandez-Pacheco at the jail. Hernandez-Pacheco claimed Serrano-Rodriguez rented the garage and that the drugs belonged to him. Hernandez-Pacheco admitted he knew Serrano-Rodriguez was storing drugs inside the garage. Hernandez-Pacheco once again said the money found in the house was not his. The next day, Hernandez-Pacheco asked Deputy Josh Porter what they were going to do with the money. When Deputy Porter informed him the money would probably be forfeited, Hernandez-Pacheco responded that such a result was fine because the money was not his.

Hernandez-Pacheco and Serrano-Rodriguez were both indicted with (1) conspiracy to distribute in excess of 500 grams of a mixture or substance containing a detectable amount of methamphetamine and (2) possessing with intent to distribute in excess 500 grams of a mixture or substance containing a detectable amount of

methamphetamine. Hernandez-Pacheco filed a motion to suppress the drugs and money found in his garage and house, arguing the search warrant was not supported by probable cause. The district court denied his motion, concluding the warrant was supported by probable cause and, even if it was not, the good faith exception enumerated in United States v. Leon, 468 U.S. 879 (1974), applied.

In addition to testimony by police officers recounting the events previously described, Serrano-Rodriguez agreed to testify against Hernandez-Pacheco. Serrano-Rodriguez stated he first met Hernandez-Pacheco at a cockfight in 2004. In November 2005, Hernandez-Pacheco told Serrano-Rodriguez he could supply him with drugs. Although Serrano-Rodriguez initially declined Hernandez-Pacheco's offer, they eventually began to do business. Hernandez-Pacheco began by providing Serrano-Rodriguez small amounts of methamphetamine. As the arrangement continued, Hernandez-Pacheco would provide Serrano-Rodriguez with larger quantities of methamphetamine. According to Serrano-Rodriguez, Hernandez-Pacheco would receive the drugs wrapped in black electrical tape and would place them in the rafters of his garage for Serrano-Rodriguez to retrieve. Serrano-Rodriguez also testified about conversations he had with Hernandez-Pacheco after they were arrested. According to Serrano-Rodriguez's testimony, Hernandez-Pacheco asked Serrano-Rodriguez to take complete responsibility for the drugs. In a second conversation, Hernandez-Pacheco wanted Serrano-Rodriguez to give him $17,000 dollars to pay for the drugs.

The defense presented testimony from several individuals. Elizabeth Hudson, a loan officer for Freedom Bank in Cassville, Missouri, testified Hernandez-Pacheco was a regular customer of the bank for several years. She identified nine vehicle loan agreements the bank entered into with Hernandez-Pacheco. She testified he usually paid off each loan before it matured by selling the vehicle. Patricia Dixon, Human Resources Manager for Hydro Aluminum in Monett, Missouri, testified Hernandez-Pacheco began working at Hydro as a full-time employee in January 2003. His

payroll records were admitted into evidence, which also showed he was terminated on August 1, 2006, for two days of not showing up for work or calling ahead of time. Helio Rodriguez testified he bought a Dodge truck from Hernandez-Pacheco three years prior for $20,000, which was reflected by a bill-of-sale executed between the two men. Luis Vasquez testified he owned a dance club that he had been trying to sell for many years. According to Vasquez, Hernandez-Pacheco expressed an interest in purchasing the club, which he was going to fund by borrowing money from other people.

Hernandez-Pacheco testified on his own behalf. He stated he rented the garage to Serrano-Rodriguez and did not know there was methamphetamine inside. According to Hernandez-Pacheco, he supplemented his income by purchasing and selling vehicles, and the cash found in his house was from the proceeds of a Cadillac he sold and the Dodge truck he sold to Helio Rodriguez. He further testified that the purported drug ledger concerned his attempt to buy a dance club from Luis Vasquez, and that the names and dollar amounts on the paper corresponded to potential sources of financing. He said that when questioned by the officers, he always claimed the money was his and that it was proceeds from his vehicle sales, and that any testimony to the contrary was either a misrepresentation or the result of his limited understanding of the English language.

The jury acquitted Hernandez-Pacheco of the possession charge, but found him guilty of the conspiracy to distribute charge. Hernandez-Pacheco then filed a motion for judgment of acquittal or, in the alternative, for a new trial based on inconsistent verdicts. The district court denied Hernandez-Pacheco's motion. The presentence investigation report calculated his advisory Guidelines range to be 151 to 188 months imprisonment. Hernandez-Pacheco requested the court to reduce his Guidelines range under U.S. Sentencing Guidelines ("U.S.S.G.") §§ 3B1.2 and 2D1.1(a)(3), which allows a sentencing court to reduce a defendant's offense level if he or she was a

minimal or minor participant in the offense. The court denied his request and sentenced him to 151 months imprisonment. Hernandez-Pacheco now appeals.

## II

Hernandez-Pacheco's first argument is that the evidence was insufficient to convict him. He argues that by acquitting him on the possession charge, the jury must have believed that the drugs in the garage did not belong to him, which is inconsistent with finding him guilty on the conspiracy charge. He argues the jurors' conclusion that he did not possess the drugs negated a crucial element of the conspiracy charge. We review the district court's denial of the motion for judgment of acquittal de novo. United States v. Ironi, 525 F.3d 683, 689 (8th Cir. 2008). "We have previously held, when considering what are characterized as inconsistent verdicts, that we only ask whether the government presented sufficient evidence to support the conviction." United States v. Opare-Addo, 486 F.3d 414, 416 (8th Cir. 2007). This is because "[w]e are reluctant to delve into the minds of the jurors to determine the reasons for apparently inconsistent verdicts." Id. Thus, we view the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences, and we "reverse only if no reasonable jury could find guilt beyond a reasonable doubt." Ironi, 525 F.3d at 689-90.

We conclude the evidence was sufficient to support Hernandez-Pacheco's conviction for conspiracy to distribute in excess of 500 grams of methamphetamine. To convict Hernandez-Pacheco of conspiracy to distribute, the government had to prove: "1) the existence of an agreement to achieve an illegal purpose; 2) the defendant's knowledge of the agreement; and 3) the defendant's knowing participation in the agreement." United States v. Camacho, 555 F.3d 695, 703 (8th Cir. 2009). The government introduced evidence that three pounds of methamphetamine were found in Hernandez-Pacheco's garage and that he made statements to police officers admitting his knowledge of the drugs' presence.

Additionally, Serrano-Rodriguez testified he would receive large amounts of methamphetamine from Hernandez-Pacheco, which he would obtain from the garage. Hernandez-Pacheco's guilt was further corroborated by the large amounts of money found inside his house. Furthermore, officers found a piece of paper listing several names – including the name "Kiko," which was identified as a nickname for Serrano-Rodriguez – along with notations of large amounts of money, which officers testified appeared to be a drug ledger.

Although Hernandez-Pacheco testified he rented the garage to Serrano-Rodriguez, was unaware that drugs were hidden within, and received the cash found in his house from vehicle sales, the jury was free to believe his alternative explanations were not credible. "[I]t is for the jury to resolve conflicting evidence and make credibility determinations, determinations that are 'virtually unreviewable on appeal.'" United States v. Lohnes, 554 F.3d 1166, 1169 (8th Cir. 2009) (quoting United States v. Johnson, 519 F.3d 816, 822 (8th Cir. 2008)). Therefore, we reject Hernandez-Pacheco's insufficiency of the evidence argument.

Hernandez-Pacheco next argues the district court erred in denying his motion to suppress. According to Hernandez-Pacheco, there was no probable cause to support the issuance of the search warrant. Under the Fourth Amendment, a warrant may only issue upon probable cause, which is present when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The government's primary source of probable cause was the information provided by Serrano-Rodriguez. "An informant's tip may be sufficiently reliable to support a probable-cause determination if the informant has previously supplied reliable information or if the tip is corroborated by independent evidence." United States v. Leppert, 408 F.3d 1039, 1041 (8th Cir. 2005).

Although Serrano-Rodriguez had not previously supplied reliable information, the government argues his tip was corroborated by the specificity of his information,

as well as Agent Paris's statement that he also knew of a "Pelon" who lived in the area and dealt methamphetamine. While a close question, we need not decide whether this information, standing alone, constituted probable cause. In United States v. Leon, 468 U.S. 897, 922-23 (1984), the Supreme Court held the exclusionary rule should not be applied to exclude evidence obtained by police officers acting in reasonable reliance on a detached and neutral magistrate's determination of probable cause, even if the warrant is later determined to be invalid. Hernandez-Pacheco argues, however, the good faith exception should not apply because the affidavit in support of the search warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923. While we are persuaded the question of probable cause is close, we are not convinced the evidence was so lacking as to render the officers' reliance on the magistrate's determination of probable cause entirely unreasonable.

Hernandez-Pacheco's last argument is that the district court erred in denying his request for a reduction in his offense level under U.S.S.G. §§ 3B1.2 and 2D1.1(a)(3). We review Hernandez-Pacheco's sentence for an abuse of discretion and consider both the procedural soundness and substantive reasonableness of the sentence imposed. See United States v. Zech, 553 F.3d 663, 665-66 (8th Cir. 2009) (standard of review). Hernandez-Pacheco's sole challenge to his sentence is that the district court erred in denying his request for a § 3B1.2 reduction.[3] "We review a district court's interpretation and application of the sentencing guidelines de novo and its findings of fact for clear error." United States v. Gallimore, 491 F.3d 871, 874-75 (8th Cir. 2007).

---

[3]We need not separately consider Hernandez-Pacheco's request under § 2D1.1(a)(3) because it is dependent upon application of the § 3B1.2 reduction. Thus, if the district court did not commit error in denying a § 3B1.2 reduction, then it did not err in denying a § 2D1.1(a)(3) reduction.

Under this provision, "[a] reduction may be appropriate if the defendant is less culpable than most other participants, but is unwarranted if the defendant was deeply involved in the offense." United States v. Godinez, 474 F.3d 1039, 1042 (8th Cir. 2007) (internal quotation marks and citation omitted). The court denied Hernandez-Pacheco's request, concluding that, based on the evidence, he was not a minor participant in the conspiracy. This factual finding was not clearly erroneous. The district court had before it evidence that it was Hernandez-Pacheco who first offered to provide drugs to Serrano-Rodriguez, it was Hernandez-Pacheco who required Serrano-Rodriguez to work his way up to the larger amounts supplied by him, and it was Hernandez-Pacheco who possessed large sums of cash as proceeds from the conspiracy. In light of this evidence, it was not clear error for the district court to conclude Hernandez-Pacheco did not play a minor or minimal role in the conspiracy so as to qualify for the § 3B1.2 reduction.

III

Accordingly, we affirm Hernandez-Pacheco's conviction and sentence.

_____