# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-3460

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Milton Hernandez, | * | |
| | * | |
| Appellant. | * | |

—————

Submitted: May 11, 2009
Filed: June 30, 2009

———————

Before RILEY, SMITH, and COLLOTON, Circuit Judges.

———————

RILEY, Circuit Judge.

On October 17, 2007, a grand jury charged Milton Hernandez (Hernandez) with (1) conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846; (2) conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 846; (3) two counts of distributing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1); and (4) three counts of distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1). A jury convicted Hernandez of all seven counts. The district court[1] sentenced Hernandez to two concurrent sentences of 151 months imprisonment, and

———————

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

five years of supervised release. Hernandez now appeals claiming (1) the evidence presented at trial was insufficient to support Hernandez's conviction, and (2) Hernandez's sentence is unreasonable. We affirm.

## I.    BACKGROUND

During trial, Federal Bureau of Investigation (FBI) Special Agent Gregory Beninato (Agent Beninato) testified he was a member of an international task force, created by the governments of the United States and El Salvador, which focused primarily on violent crimes arising out of MS-13, a Salvadoran gang. In late 2006, Agent Beninato was contacted by a supervisor who explained Jorge Palacios (Palacios), a former MS-13 member who had cooperated with law enforcement in Los Angeles, California, needed to relocate due to threats on Palacios's life. Palacios relocated to Omaha, Nebraska, where Palacios continued to cooperate with law enforcement and worked closely with Agent Beninato.

Agent Beninato testified Palacios made contact with several MS-13 members and conducted numerous illegal drug and firearm transactions with MS-13 members. Several of these transactions were recorded using a video camera which was hidden on Palacios's hat. Still photos were made from the video. Other transactions were recorded with an audio device. Using these recordings and photos as exhibits, Agent Beninato described various occasions where Palacios met with Hernandez at Hernandez's home or place of employment, and Palacios purchased methamphetamine or cocaine from either Hernandez or another co-conspirator. Agent Beninato testified specifically to seven drug transactions. This testimony was corroborated with the audio and videotapes, as well as several still photos depicting the transactions.

With Palacios's assistance, over 20 people were indicted for various offenses. In exchange for his efforts, the FBI paid Palacios approximately $126,500. Roughly $75,000 was paid for Palacios's work in Omaha, and the remainder was paid for Palacios's work in Los Angeles.

During Hernandez's trial, Palacios spent a significant amount of time discussing the video and audio recordings and the still pictures of the drug transactions. The recordings were played for the jury, and Palacios explained what was taking place in the recordings. This testimony corroborated Agent Beninato's testimony and discussed, in even greater detail, each of the seven drug transactions.

The government also presented two other cooperating witnesses, Jose Louis Aguirre-Heras (Aguirre-Heras), who was convicted for the sale of narcotics after he was recorded selling drugs to Palacios, and Doney Ordorica (Ordorica), who was convicted for drug offenses in 2007. Each witness described his involvement in multiple drug deals with Palacios and Hernandez.

The jury found Hernandez guilty on all seven charges of conspiracy to distribute and distribution of methamphetamine and crack cocaine. Pursuant to the advisory United States Sentencing Guidelines (Guidelines) section 3D1.2(d), the district court combined the various counts into two separate groups—the first consisting of counts one, two, five, six, and seven, and the second consisting of counts three and four. The district court then imposed two concurrent sentences of 151 months imprisonment and five years supervised release. Hernandez now challenges his conviction and sentence on appeal.

## II.    DISCUSSION
### A.    Sufficiency of the Evidence
Hernandez claims the government failed to present sufficient evidence to support his conviction. "'We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict.'" United States v. Bower, 484 F.3d 1021, 1025 (8th Cir. 2007) (quoting United States v. May, 476 F.3d 638, 640-41 (8th Cir. 2007)). A verdict will only be overturned "if

no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt." United States v. Gray, 369 F.3d 1024, 1028 (8th Cir. 2004) (citation omitted).

"To establish that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." United States v. Jiminez, 487 F.3d 1140, 1146 (8th Cir. 2007) (quoting United States v. Espino, 317 F.3d 788, 792 (8th Cir. 2003)). In order to sustain a conviction for distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1), the government must prove (1) Hernandez knowingly and intentionally distributed a controlled substance, and (2) Hernandez knew the item was a controlled substance at the time of distribution. See United States v. Olguin, 428 F.3d 727, 728 (8th Cir. 2005); United States v. Vesey, 395 F.3d 861, 863 (8th Cir. 2005).

Upon our review of the trial evidence, the jury's verdict was supported by sufficient evidence to sustain a conviction for each of these offenses. Palacios testified he purchased drugs from Hernandez, or one of Hernandez's co-conspirators, on several occasions. Seven of these occasions were captured on a video or audio recording and were played for the jury. Aguirre-Heras testified he sold illegal narcotics to Hernandez and repeatedly sold drugs from Hernandez's home. Two of these sales were videotaped and played for the jury. Finally, Ordorica reported he purchased a total of 14 ounces of methamphetamine from Hernandez in the course of eight separate drug transactions and sold 2 ounces of powder cocaine to Hernandez approximately eight or nine times.

Hernandez contends the cooperating witnesses were not credible, and therefore, there was insufficient evidence to support his convictions. Specifically, Hernandez claims Palacios was not a credible witness because Palacios has an extensive criminal history, Palacios testified he did not assault his former girlfriend despite having

-4-

previously pled guilty to that offense, and Palacios feared he would be deported if he did not cooperate. Hernandez also challenges Aguirre-Heras's credibility, claiming Aguirre-Heras was only testifying in an attempt to minimize his ten year prison sentence and avoid deportation, and Aguirre-Heras's testimony that he only sold drugs on the occasions when he was caught was "facially unbelievable." Finally, Hernandez asserts Ordorica's testimony was not credible because Ordorica has an extensive criminal history, and because Ordorica initially told police he sold illegal narcotics to Hernandez once, but testified at trial that Ordorica sold drugs to Hernandez eight times.

To reach a verdict, a jury is often required to weigh the credibility of criminal witnesses. See, e.g., United States v. Daugherty, 952 F.2d 969, 970 (8th Cir. 1991) (citing United States v. Bailey, 444 U.S. 394, 414-15 (1980)). "The finder of fact may accept the parts of a witness's testimony that it finds credible while rejecting any portion it finds implausible or unreliable." United States v. Boyce, 564 F.3d 911, 916 (8th Cir. 2009) (citation omitted). "It is the function of the jury, not an appellate court, to resolve conflicts in testimony or judge the credibility of witnesses." United States v. Harrison, 671 F.2d 1159, 1162 (8th Cir. 1982). Such credibility findings are "'virtually unreviewable on appeal.'" Boyce, 564 F.3d at 916 (quoting United States v. Gomez-Perez, 452 F.3d 739, 743 (8th Cir. 2006)).

The district court correctly instructed the jury on its duty to judge the credibility of the witnesses. We presume the jurors followed the instructions absent evidence to the contrary. See United States v. Harper, 466 F.3d 634, 647 (8th Cir. 2006) (citing Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985)). On this record, the jury's credibility determinations are supported by sufficient evidence, and viewing the evidence in the light most favorable to the verdict, the jury reasonably found Hernandez guilty beyond a reasonable doubt.

**B.    Unreasonable Sentence**

Hernandez also contends his sentence of 151 months imprisonment was greater than necessary to promote the goals of 18 U.S.C. § 3553(a)(2), and is therefore unreasonable. Hernandez argues, because Hernandez "was not a significant player in the drug distribution industry" and "had no prior convictions for violent crimes," his sentence "was beyond the controlling statutory directives," and Hernandez should have been sentenced to no more than the mandatory minimum sentence.

An "appellate court must review [a] sentence under an abuse-of-discretion standard." Gall v. United States, 522 U.S. 38, 128 S. Ct. 586, 597 (2007). Our court "must first ensure that the district court committed no significant procedural error, such as . . . failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Id. If the sentence is procedurally sound, we "then consider the substantive reasonableness of the sentence imposed." Id. at __, 128 S. Ct. at 597.

Procedurally, a sentencing court should first accurately calculate a defendant's sentencing Guidelines range and provide each party an opportunity to explain their desired sentence. See id. at __, 128 S. Ct. at 596. The district court must then consider each of the § 3553(a) factors and conduct an individualized assessment to determine what sentence is appropriate given the facts in the particular case. Id. at __, 128 S. Ct. at 596-97. "In explaining the chosen sentence and analyzing the relevant § 3553(a) factors, 'a district court is not required to provide a full opinion in every case, but must set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" United States v. Hill, 552 F.3d 686, 691 (8th Cir. 2009) (quoting United States v. Robinson, 516 F.3d 716, 718 (8th Cir. 2008)) (internal marks omitted).

The district court accurately calculated Hernandez's Guidelines range and provided Hernandez with the opportunity to argue for his desired sentence. Based upon Hernandez's offense level of 32 and criminal history category III, Hernandez's Guideline range was 151 to 188 months imprisonment. The court then considered the § 3553(a) factors and determined, based upon the facts before it, that a sentence at the bottom of the Guidelines range, 151 months, was appropriate. "Where, as here, the sentence imposed is within the advisory guideline range, we accord it a presumption of reasonableness." United States v. Harris, 493 F.3d 928, 932 (8th Cir. 2007) (citing Rita v. United States, 551 U.S. 338, __, 127 S. Ct. 2456, 2462-63 (2007); United States v. Lincoln, 413 F.3d 716, 717 (8th Cir. 2005)). Hernandez failed to rebut this presumption. We therefore conclude the district court's sentence was both procedurally and substantively reasonable, and we find no abuse of the district court's discretion.

## III.  CONCLUSION

The district court's judgment and sentence are affirmed.

_____