# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 11-1784

_____

United States of America,

        Appellee,

v.

John Travis Rogers,

        Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Western District of Missouri.

[UNPUBLISHED]

_____

Submitted: November 18, 2011
Filed: March 6, 2012

_____

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

A jury found John Travis Rogers guilty of conspiracy to distribute more than 500 grams of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Rogers appeals, contending that the evidence was insufficient to support his conviction and that the district court[1] erred in determining

_____

[1] The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

the drug quantity used in calculating his advisory sentencing guidelines range. For the reasons discussed below, we affirm.

We review the sufficiency of the evidence supporting a conviction *de novo*, viewing the evidence in the light most favorable to the verdict, resolving all conflicts and accepting all reasonable inferences in favor of the verdict. *United States v. Castro-Gaxiola*, 479 F.3d 579, 581 (8th Cir. 2007). We must affirm if any interpretation of the evidence could lead a reasonable jury to find the defendant guilty beyond a reasonable doubt. *Id.* The elements of a conspiracy to distribute drugs are that (1) there was a conspiracy, that is, an agreement to distribute drugs, (2) the defendant knew of the conspiracy, and (3) the defendant intentionally joined the conspiracy. *United States v. Hernandez*, 569 F.3d 893, 896 (8th Cir. 2009). Rogers concedes that the evidence established a conspiracy but denies that it shows he knew of or intentionally joined the conspiracy.

We hold that the evidence is sufficient to support the jury's verdict. Missouri State Highway Patrol Trooper Dan Banasik testified about the investigation by law enforcement of an operation that brought methamphetamine from California to the Springfield, Missouri area for redistribution throughout southwest Missouri. According to Trooper Banasik, the operation's "main person" in Springfield was Jason Clark, and Rogers was one of about fourteen people to whom Clark forwarded the drugs for redistribution. Clark testified that Rogers became a regular distributor for him around August 2007, eventually obtaining as much as a pound of methamphetamine at a time from Clark for resale.

The jury's finding that Rogers participated in the conspiracy also is supported by evidence obtained through a voice and text wiretap of Clark's cellular phone in the summer of 2008. Clark testified that he typically arranged for his source to ship methamphetamine from California using UPS and that, in order to avoid drawing suspicion to a single place, he relied on his local associates to provide a different

address for each UPS delivery. The jury heard recordings of numerous telephone conversations between Clark and Rogers from a time period spanning June 5 through August 22, 2008 in which Rogers provided addresses for four such deliveries of methamphetamine. Some of the recorded conversations and text messages also involved Clark relaying the addresses suggested by Rogers to the California source. Although Clark and Rogers avoided expressly referring to drugs in their telephone conversations, Clark in his trial testimony confirmed that Rogers knew the deliveries consisted of methamphetamine.

Rogers contends that Clark's testimony was not credible because Clark received a reduced sentence in exchange for providing testimony against him. This contention is misdirected. "To reach a verdict, a jury is often required to weigh the credibility of criminal witnesses," *Hernandez*, 569 F.3d at 896, and "[i]t is the function of the jury, not an appellate court, to resolve conflicts in testimony or judge the credibility of witnesses," *id.* at 897 (quoting *United States v. Harrison*, 671 F.2d 1159, 1162 (8th Cir. 1982)). We will not disturb the jury's credibility determinations.

Rogers also argues that the jury's acquittal of him on a second count, the use of a telephone on August 18, 2008 to facilitate a conspiracy in violation of 21 U.S.C. § 843(b) and (d), shows that the jury could not have credited Clark's testimony and the wiretap evidence. This argument has no merit. "The finder of fact may accept the parts of a witness's testimony that it finds credible while rejecting any portion it finds implausible or unreliable." *Hernandez*, 569 F.3d at 896-97 (quoting *United States v. Boyce*, 564 F.3d 911, 916 (8th Cir. 2009)). In particular, the jury could have found Clark's testimony and the wiretap evidence insufficient to hold Rogers responsible for facilitating the one delivery of methamphetamine discussed on August 18, while nevertheless crediting Clark's testimony and the wiretap evidence with respect to the overall conspiracy. *See United States v. Ironi*, 525 F.3d 683, 689 (8th Cir. 2008) ("Even if we characterize the verdicts as inconsistent, '[w]e have previously held, when considering what are characterized as inconsistent verdicts, that we only ask

whether the government presented sufficient evidence to support the conviction. We are reluctant to delve into the minds of the jurors to determine the reasons for apparently inconsistent verdicts.'" (quoting *United States v. Opare-Addo*, 486 F.3d 414, 416 (8th Cir. 2007))). As a result, we hold that the evidence was sufficient to support the jury's verdict.

Rogers next contends that the district court erred in determining the quantity of methamphetamine attributable to him for purposes of calculating his advisory sentencing guidelines range. We review a district court's drug quantity findings for clear error. *United States v. Payton*, 636 F.3d 1027, 1046 (8th Cir.), *cert. denied*, 565 U.S. ---, 132 S. Ct. 349 (2011). The Government need prove drug quantity only by a preponderance of the evidence. *Id.*

At sentencing, the Government noted that a laboratory report introduced at trial stated that one of the four packages for which Rogers arranged a shipping address contained just over 5.5 pounds of a mixture containing 44.8 percent methamphetamine, resulting in 1.145 kilograms of actual methamphetamine attributable to Rogers. The Government attempted to show that at least an additional 0.355 kilograms of actual methamphetamine was attributable to the conspiracy in order to establish a base offense level of 38. *See* U.S.S.G. § 2D1.1(c)(1) (establishing a base offense level of 38 for "1.5 KG or more of Methamphetamine (actual)"). To do so, the Government first established, based on the wiretap evidence, that the other three packages for which Rogers arranged a shipping address contained about 2.5, 4, and 5 pounds, respectively, of a mixture containing methamphetamine. Taken collectively, each of those three packages would have needed to be only about 8 percent pure to contain the necessary 0.355 kilograms of actual methamphetamine. Next, the Government introduced laboratory reports stating that four additional quantities of methamphetamine seized during the conspiracy period, either in transit to Clark or just received from Clark, were found to have purities of 47.8 percent, 34.3

percent, 42.3 percent, and 39.4 percent, respectively.[2]  In light of the evidence that Clark dealt consistently with purities ranging from 34.3 to 47.8 percent and that the one package seized en route to Rogers fit comfortably within this range, the district court did not clearly err in finding that the three additional packages of methamphetamine for which Rogers arranged delivery addresses were more likely than not at least 8 percent pure as well.  *See United States v. Brown*, 311 F.3d 886, 889 (8th Cir. 2002) (affirming a drug-quantity finding where the district court "determined drug quantity [for five total deliveries] by estimating that each prior trip involved approximately the same quantity of cocaine as the government seized" during the fifth delivery).  Therefore, the district court did not clearly err in determining that the conspiracy involved 1.5 or more kilograms of actual methamphetamine.

For the foregoing reasons, we affirm Rogers's conviction and sentence.

_____

---

[2]Because these four additional laboratory reports were introduced through the testimony of a DEA agent who participated in the investigation, rather than through a conductor of the laboratory testing, Rogers argues that the use of the four laboratory reports violates *Crawford v. Washington*, 541 U.S. 36 (2004).  We have held, however, that *Crawford* did "not alter the pre-*Crawford* law that the admission of hearsay testimony at sentencing does not violate confrontation rights." *United States v. Brown*, 430 F.3d 942, 944 (8th Cir. 2005) (quoting *United States v. Chau*, 426 F.3d 1318, 1323 (11th Cir. 2005)).  Accordingly, we find no error in the district court's reliance on the four laboratory reports for sentencing purposes.