Richard HALL, Appellant/Cross Appellee,

v.

UNITED STATES of America, Appellee/Cross Appellant.

Nos. 93–3966, 94–1237.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1994.

Decided Feb. 2, 1995.

Thomas K. Schoppert, Minot, ND, for appellant.

Cameron W. Hayden, Bismarck, ND, for appellee.

Before BEAM, Circuit Judge, FRIEDMAN * Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The appellant Hall challenges on two grounds his jury conviction under 18 U.S.C. § 113(f) (1988) for assault resulting in serious bodily injury. He contends that the district court ** erred in refusing to give a jury instruction on self-defense and that the prosecutor improperly commented on defense counsel's failure to cross-examine a key government witness. The government cross-appeals the district court's refusal to enhance the defendant's sentence for obstruction of justice. We affirm the conviction, but vacate the sentence and remand for reconsideration.

---

* DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

** Honorable Patrick A. Conmy, United States District Court Judge, for the District of North Dakota.

## I

Viewing the evidence most favorably to the government, *see United States v. Bonadonna*, 775 F.2d 949, 950 (8th Cir.1985), the jury could have found the following facts (most of which are not disputed):

Hall encountered Hans Fredericks at an outdoor party on the Fort Berthold Indian Reservation in North Dakota. Shortly after midnight, a large number of people had gathered around a fire to drink alcoholic beverages and to socialize. Hall approached Fredericks and accused him of beating up Hall's father several months earlier. He asked Fredericks "do you think you can beat me up?". Fredericks replied "I'm not here to fight." Hall continued to challenge Fredericks to fight and Fredericks continued to decline. The conversation concluded when Hall sent his wife to get his brother, Ty Hall, and Fredericks again said that he did not wish to fight.

Hall then hit Fredericks in the face at least twice in rapid succession. Fredericks fell to the ground and covered his head with his jacket and hands. Hall climbed on top of him and repeatedly struck him on the head and face. After some time, Hall exchanged places with his brother Ty, who then took his turn at beating Fredericks. The only resistance that Fredericks offered during the entire incident was to attempt to cover his head with his jacket and hands.

At trial, two eyewitnesses to the entire incident, as well as Fredericks, testified. None of the evidence presented indicated that Fredericks made any threatening moves toward Hall before the assault occurred.

The beating seriously injured Fredericks. It fractured his cheekbone in four places and caused bleeding in his eye, discomfort around his ear, upper-jaw numbness, and long-term cosmetic damage. He underwent surgery, without which he would have been able to open his mouth the width of only one or two fingers.

Hall and his brother, Ty, were tried before a jury, which convicted Hall of assault resulting in serious bodily injury. He was sentenced to thirty-six (36) months imprison-

ment. The district court denied his motion for a new trial.

## II

Hall contends that the district court erred by failing to give an instruction on self-defense.

A "[self-defense] instruction must be given if there is evidence upon which the jury could rationally sustain the defense." *United States v. Jackson*, 726 F.2d 1466, 1468 (9th Cir.1984). A mere "scintilla of evidence," however, is insufficient to require the instruction. *Id.* To sustain the defense, the jury would have to find that Hall used "such force that he reasonably believe[d] [was] necessary to protect himself from unlawful physical harm about to be inflicted upon him by another." *See United States v. Walker*, 817 F.2d 461, 463 (8th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 134 (1987) (a self-defense instruction using this language adequately stated the law). "Nor is the defendant entitled to an instruction when the evidence does not support it." *Id.*

The only evidence that Hall cites in support of his self-defense instruction is testimony by Homer White Buffalo, a criminal investigator for the Bureau of Indian Affairs, regarding a statement Hall made to him in an interview three days after the assault:

[Hall] said that they got into an argument over Hans fighting his father a year before and at one point it looked like he—Hans—was going to strike or hit him, so he took him down and hit him three or four times.

Q. Did he say Hans Fredericks actually threw a punch or tried to hit him?

A. He said, "It looked like he was going to hit me."

This evidence was insufficient to justify a jury in concluding that Hall reasonably believed that his assault of Fredericks was "necessary to protect himself from unlawful physical harm" that Fredericks was about to inflict on him. Hall's statement to White Buffalo did not explain why Hall allegedly believed that Fredericks was "going to hit" him. None of the evidence indicates that Fredericks made any threatening gestures or

movements toward Hall, that he made a fist or advanced toward him, or even that he made threatening statements to him. To the contrary, the evidence is unchallenged that Fredericks repeatedly told Hall that he did not want to fight, and that Hall, not Fredericks, was the aggressor. Fredericks testified that his hands were at his sides and not doubled up as fists, and that he did not raise his fists at Hall.

In denying the motion for a new trial because of failure to give a self-defense instruction, the district court correctly ruled: "There simply was an insufficient basis for giving this instruction. No evidence was introduced showing any reasonable apprehension of fear of attack."

### III

█ Hall also contends that the prosecutor's comment in closing argument on Hall's failure to cross-examine a key government witness constituted prosecutorial misconduct that requires reversal of his conviction and a new trial.

The witness, Randall Baker, was present at the assault and testified about it. Following his direct testimony, the court recessed for the night. The next morning, neither defendant's counsel cross-examined Baker.

In closing argument the prosecutor stated that when he had completed his direct examination of Baker,

the Judge gave the defendant—defense team the opportunity to prepare all night for the cross-examination of Randy Baker. So I expected them to go back and sharpen their pencils and write down a whole lot of questions as to what Randy Baker was saying the previous day and how they could cross-examine him.

Well, when we came back the next morning ... there wasn't one question on cross-examination. That's proof in this case. You saw it. There wasn't one question on cross-examination.

The court overruled Hall's objection to the argument, pointing out: "You didn't cross-examine. It's fair for him to state so. You don't have to. But it's fair for him to state so." The prosecutor then stated:

Not one question. Not one question. And you have to ask yourself why. The reason is Randy Baker told the truth. Randy Baker told the truth. Randy Baker said he heard something. He heard Mr. Fredericks saying "I don't want to fight." That's what he heard. He also saw something. He saw the defendant, Richard, throw the first punch. He also saw Mr. Fredericks get beat up, didn't he? And he saw afterwards—very specifically, he said, if you remember, that when Richard was done, Ty took over. But he also heard something else which is important. He heard hits, didn't he?

In the circumstances of this case, the prosecutor's comments on Hall's failure to cross-examine Baker did not constitute prosecutorial misconduct requiring reversal. "The prosecutor may focus on the absence of impeachment during cross-examination so long as his comments are 'sufficiently circumscribed and [do] not necessarily implicate appellant's assertion of his fifth amendment right' not to take the stand in his own defense." *United States v. Goldman*, 563 F.2d 501, 505 (1st Cir.1977) (quoting *United States v. Hooker*, 541 F.2d 300, 307 (1st Cir.1976)).

The comments here were "sufficiently circumscribed." The prosecutor addressed only Hall's failure to cross-examine the witness and thus nothing in his remarks could even remotely be viewed as a comment on Hall's failure to testify in his own defense. As the district court correctly concluded in denying a new trial, "The remarks during closing did not affect Richard Hall's right to a fair trial."

### IV

█ In its cross-appeal, the government challenges the district court's refusal to increase Hall's sentence for obstruction of justice.

Section 3C1.1 of the United States Sentencing Guidelines provides that if the defendant willfully obstructs or impedes the administration of justice, or attempts to do so, "increase the offense level by two levels." Application note 3(a) to this Guideline lists, as an example "of the types of conduct to which the enhancement applies," "(a) threat-

ening, intimidating or otherwise unduly influencing a … witness.…"

The presentencing report stated that Hall and his brother had confronted the witness, Randy Baker, in a bar on July 4, 1993, and had told him that if he testified "they would get him," that this was a family matter that did not concern him, and that if Baker said "anything, he would be beaten." The report further stated that Baker feared that the Halls would carry out the threat and rarely went out alone. Hall denied that the incident occurred. The report recommended a two point offense level enhancement—a recommendation that the prosecution supported.

The district court denied an enhancement for obstruction of justice. At the sentencing hearing, the court stated:

Let's be realistic. We've talked about political problems and political pressures, and we've talked about motivation, and I think it is fair that we do acknowledge the unsettled state of the reservation in some respects. The power struggles that are historically present between families occurs at a time shortly in conjunction with previous difficulties of Mr. Hall … I wondered if this description of this barroom incident, if it occurred rises to a level of an obstruction of justice as contemplated by the Sentencing Commission when they're talking about an analysis that could be applicable to a Mafia enforcer visiting potential witnesses.

My basic conclusion is that I'm not going to enhance by two points for obstruction of justice and I'm simply going to do that, recognizing reservation life in this context for what it is, not approving of it, not condoning it, but not believing that this type of bar room conversation should, when disputed, be elevated to something causing a potential additional 12 months of incarceration of an individual.

The government contends that the district court erred by failing to find whether a threat occurred. If a defendant disputes an allegation in a presentencing report, as Hall does here, then Federal Rule of Criminal Procedure 32(c)(3)(D) requires the district court to make a finding, unless it chooses not to take the matter into account in sentencing.

Fed.R.Crim.Pro. 32(c)(3)(D) (1988); *United States v. Hamilton,* 794 F.2d 1345, 1347 (8th Cir.1986).

The district court did not find whether Hall made the disputed threat. The court apparently concluded that even if Hall had threatened Baker, it would not be appropriate to enhance the sentence, "recognizing reservation life in this context for what it is." Section 3C1.1, however, neither limits the offense of obstruction of justice to any particular factual context, such as cases concerning organized crime, nor makes exceptions for social circumstances, such as the realities of reservation life.

If Hall in fact threatened the witness, the Guidelines did not give the district court discretion to refuse to take the threat into account in sentencing. *United States v. Medina,* 992 F.2d 573, 591 (6th Cir.1993), *cert. denied sub nom., Wilson v. United States,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 371 (1994). Instead, section 3C1.1 required the court to "increase the offense level by two levels" "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1 (1994). If Hall threatened the witness, the district court had no choice but to impose the sentence enhancement that the Guidelines mandate.

Accordingly, the sentence must be vacated, and the case remanded to the district court to find whether Hall threatened the witness Baker and, if he did, to enhance the sentence by two levels.

CONCLUSION

The conviction is affirmed. The sentence is vacated and the case is remanded to the district court to find whether Hall threatened the witness and, if the court finds that he did, to redetermine the sentence by enhancing the offense level by two levels.

MORRIS SHEPPARD ARNOLD, Circuit Judge, concurring in the judgment.

I concur entirely in Parts I, III, and IV of the court's opinion. I believe, however, that

the district court should have given Hall's requested self-defense instruction. *See, e.g., Closs v. Leapley,* 18 F.3d 574, 579–80 (8th Cir.1994). But I concur in the affirmance of the conviction because I see no reasonable likelihood that Hall would have been acquitted even if the jury had been properly charged or that the fundamental fairness of the trial was affected. *See, e.g., United States v. Vue,* 13 F.3d 1206, 1213 (8th Cir. 1994); *see also Frey v. Leapley,* 931 F.2d 1253, 1255 (8th Cir.1991).