# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2535
_____

United States of America

*Plaintiff - Appellee*

v.

Jackie Davidson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: April 9, 2024
Filed: July 18, 2024
_____

Before GRUENDER, MELLOY, and KELLY, Circuit Judges.
_____

GRUENDER, Circuit Judge.

After Jackie Davidson shot at the back bumper of an SUV which—unbeknownst to him—was being driven by federal law enforcement officers, he was found guilty of assaulting federal officers with a deadly weapon and discharging a firearm during a crime of violence. *See* 18 U.S.C. §§ 111(a)(1), (b), 924(c). Davidson appeals his conviction, and we affirm.

# I.

The following facts are those presented by Davidson at his pretrial proffer. Davidson lived in rural Arkansas, at the dead end of a long, one-lane gravel road named Lee Street. This private road led to Davidson's house; the house next door belonged to Davidson's cousin, Leon Davidson. Leon was friends with a man named Omar, whom Davidson had witnessed carrying a gun, stealing license plates off vehicles on Leon's property, and bringing stolen cars to Leon to chop up and resell. Davidson had suspected Omar of stealing from him and had heard that Omar was wanted in California. Things escalated when Davidson got a call from Leon warning him that Omar was on his way to rob Davidson. Omar and another man soon arrived at Davidson's house in a black SUV with tinted windows. After a tense exchange of words and the mutual brandishing of guns, Davidson warned Omar never to return.

Two days later, while Davidson was deer hunting in the woods, he saw a black SUV with tinted windows driving slowly down Lee Street towards his house. Assuming that Omar and his accomplice had returned, Davidson stepped out onto Lee Street and began walking towards his house and the SUV. By this point, the SUV had turned around and was slowly heading back towards Davidson at approximately five miles per hour. Davidson attempted to flag down the SUV, but instead it sped up to approximately ten or fifteen miles per hour and drove past Davidson, who had to jump to the side of the road to avoid being hit. As the car drove away, Davidson fired his hunting weapon, a twelve-gauge shotgun, and hit the rear bumper of the SUV. His shotgun then jammed, so Davidson pulled out a pistol and fired multiple shots up into the air.

Two weeks later, the police came to arrest Davidson. Davidson assumed that they were there because he had shot at the SUV two weeks earlier. However, he was shocked to learn that the SUV had been driven not by Omar, but by two federal law enforcement officers investigating another one of Leon's associates.

A federal grand jury charged Davidson with attempted murder of federal officers, assault of federal officers, and two counts of knowingly discharging a deadly weapon during a crime of violence. Before trial, the Government filed a motion in limine to prevent Davidson from arguing self-defense to the jury. The Government contended that—even fully crediting Davidson's story about Omar—when Davidson shot at the SUV, he did not act out of a reasonable belief that harm was about to be inflicted upon him and so, as a matter of law, he could not claim self-defense. After taking evidence and hearing argument on the issue, the district court[1] agreed with the Government and barred Davidson from arguing self-defense at trial. The district court also concluded that *United States v. Feola*, 420 U.S. 671 (1975), foreclosed Davidson's argument that the assault-of-federal-officers statute required the defendant to know that his victims are federal officers. *See* 18 U.S.C. § 111. The case then proceeded to trial.

At the close of trial, Davidson requested that the district court modify the wording of the assault-of-federal-officers jury instruction from the statutory language, which reads: "forcibly assaults, resists, opposes, impedes, intimidates, or interferes . . . ." Davidson asked the district court to include the word "forcibly" before each verb to clarify that the word "forcibly" applies to all means of violating § 111. Although the district court agreed that "forcibly" applied to each verb, it denied the request as unnecessary. The district court also instructed the jury that self-defense was not a defense available to Davidson. After deliberating, the jury found Davidson guilty of one count of assault of federal officers and one count of discharging a firearm during a crime of violence and acquitted Davidson of all other charges. The district court then sentenced Davidson to 120 months and 1 day's imprisonment and 3 years' supervised release. Davidson appeals.

---

[1]The Honorable Lee P. Rudofsky, United States District Judge for the Eastern District of Arkansas.

## II.

Davidson raises three arguments on appeal: that the district court erred in prohibiting him from raising self-defense at trial, that the district court erred in concluding that the Government need not prove that he knew his victims were federal officers, and that the district court abused its discretion in instructing the jury. We address each in turn.

### A.

Davidson first argues that the district court erred in preventing him from arguing self-defense to the jury. This argument has two parts: Davidson first contends that the district court erred by deciding the availability of self-defense via pre-trial proffer and next contends that the district court erred again by determining that he did not proffer sufficient facts to support his self-defense claim. "We review the district court's denial of a proffered legal defense de novo." *United States v. Joiner*, 39 F.4th 1003, 1009 (8th Cir. 2022).

We have consistently permitted pre-trial determinations as to whether a particular defense is available. *See, e.g.*, *United States v. Myles*, 962 F.3d 384, 388 (8th Cir. 2020); *United States v. Andrade-Rodriguez*, 531 F.3d 721, 724 (8th Cir. 2008). However, these cases all considered the availability of affirmative defenses "that the common law [has] long required a defendant to bear the burden of proving . . . by a preponderance of the evidence." *Id.* Self-defense is different: "Although a federal defendant bears the burden of production on the issue of self-defense, once that burden is met, the government must prove beyond a reasonable doubt that the defendant did not act in self-defense." *United States v. Farlee*, 757 F.3d 810, 815 (8th Cir. 2014). Furthermore, "[a] self-defense instruction must be given if there is evidence upon which the jury could rationally sustain the defense," that is, if the defendant provides more than "[a] mere scintilla of evidence." *Hall v. United States*, 46 F.3d 855, 857 (8th Cir. 1995) (internal quotation marks omitted).

Davidson argues that this distinction means that self-defense, unlike other affirmative defenses, cannot properly be resolved before trial. We disagree. Though the burden of production is not a heavy one, when the defendant's evidence, even viewed in the light most favorable to him, "is insufficient to sustain [an instruction of self-defense] even if believed, the trial court and jury need not be burdened with testimony supporting . . . the defense." *United States v. Bailey*, 444 U.S. 394, 416 (1980). The district court did not err in requiring Davidson to provide a pre-trial proffer on the issue of self-defense.

And the evidence Davidson proffered, even when viewed in the light most favorable to him, was insufficient to meet the burden of production. *See United States v. Yan Naing*, 820 F.3d 1006, 1011 (8th Cir. 2016) ("[W]hile we typically review the exclusion of testimony intended to establish an affirmative defense for abuse of discretion, we review the exclusion de novo where it was based on the legal insufficiency of an affirmative defense."). "To sustain the defense, the jury would have to find that [Davidson] used such force that he reasonably believed was necessary to protect himself from unlawful physical harm about to be inflicted upon him by another." *Hall*, 46 F.3d at 857 (internal quotation marks omitted); *see also Farlee*, 757 F.3d at 818 ("One is entitled to stand his ground and use such force as is reasonably necessary under the circumstances to save his life or protect himself from serious bodily harm, if he reasonably believes such danger is imminent . . . ." (internal quotation marks omitted)).

Davidson cannot meet the imminency requirement. The evidence does not show that he acted out of a reasonable belief of danger that was "imminent," *id.*, or in other words out of a reasonable belief that danger was "about to be inflicted upon him," *Hall*, 46 F.3d at 857; *see also Imminent*, Black's Law Dictionary (11th ed. 2019) ("threatening to occur immediately; dangerously impending"). Davidson argues that the evidence shows that he possessed a reasonable belief of imminent danger because he had to jump out of the way of the SUV to avoid being hit, he was afraid that the SUV might back up over him, and he was afraid that the SUV's occupants might start shooting at him at any moment. But "[f]orce used after the

danger has ceased to exist cannot be justified on the basis of reasonable belief." *United States v. Bordeaux*, 570 F.3d 1041, 1048 (8th Cir. 2009). Davidson only shot at the SUV after it had passed by him. As he shot at it, the SUV did nothing but continue to accelerate away from him. Fear that another might employ deadly force, without any action by the other to support that fear, is insufficient to create a reasonable belief of imminent danger. *See United States v. Greer*, 57 F.4th 626, 630 (8th Cir. 2023) (holding that defendant's belief that "'something was about to go down' . . . did not justify [defendant's] attempt to use deadly force, in the presence of innocent bystanders, before [the victim] took any action likely to cause death or great bodily harm"); *United States v. Oakie*, 12 F.3d 1436, 1443 (8th Cir. 1993) (concluding that defendant's fear, during a car chase, that he was being chased not by law enforcement but by a man who threatened to harm him was insufficient to demonstrate a reasonable belief that shooting at the pursuing car was necessary for defendant's protection); *Hall*, 46 F.3d at 857-58 (holding that defendant's belief alone that victim was about to hit him was insufficient to justify a self-defense instruction).

Although defendants bear a lower burden when raising the defense of self-defense than they do when raising other affirmative defenses, the district court is not thereby precluded from determining pre-trial the availability of a self-defense claim. And because Davidson did not proffer any evidence from which a reasonable jury could conclude that he acted out of a reasonable belief that he was in imminent danger, Davidson did not meet the "mere scintilla of evidence" standard. The district court did not err in prohibiting Davidson from arguing self-defense at trial.[2]

B.

Davidson next argues that the district court erred in concluding that *Feola* foreclosed his argument that the Government must prove that he knew his victims

---

[2]For this reason, the district court also did not abuse its discretion by refusing to instruct the jury on self-defense.

were federal officers. We review legal questions *de novo*. *United States v. Porter*, 18 F.4th 281, 283 (8th Cir. 2021). *Feola* principally holds that "§ 111 cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer." 420 U.S. at 684. Davidson argues first that *Feola* itself provides an exception to this rule, second that *Feola* has been overruled by implication, and third that *Feola* is distinguishable because the Government in this case did not have to prove that Davidson acted with any criminal intent at all. All three arguments fail.

Davidson first points to *Feola*'s statement that:

> [T]here may well be circumstances in which ignorance of the official status of the person assaulted or resisted negates the very existence of mens rea. For example, where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property.

*Id.* at 686. In other words, a defendant may lack the requisite intent to assault if, for example, he reasonably but mistakenly believed that a plainclothes officer was placing the defendant in imminent danger. This principle does not help Davidson, because, as discussed above, he lacked a reasonable belief that he was in imminent danger. Davidson's second argument also falls flat. Although he cites numerous Supreme Court cases that allegedly have cast doubt on *Feola*'s holding, none of them purport to have overruled *Feola*, and so we remain bound by it. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). Davidson's third argument is similarly unavailing: *Feola* explicitly states that "the statute requires . . . an intent to assault . . . ." 420 U.S. at 684. The Government had to prove, and did prove at trial, that Davidson acted with criminal intent to assault

the SUV's occupants regardless of whether they were law enforcement officers. The district court did not err in finding that *Feola* governs this case.

## C.

Finally, Davidson argues that the district court abused its discretion when it did not repeat the word "forcibly" in its assault-of-federal-officers jury instruction and when it instructed the jury that self-defense was not available to Davidson. "We review the district court's formulation of the jury instructions for abuse of discretion, and its interpretation of the law *de novo*." *United States v. Jackson*, 69 F.4th 495, 499 (8th Cir. 2023). "Jury instructions are adequate if, taken as a whole, they adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government." *United States v. Weckman*, 982 F.3d 1167, 1175 (8th Cir. 2020) (internal quotation marks omitted). "A defendant is not entitled to a particularly worded instruction where the instructions given adequately and correctly cover the substance of the requested instruction." *United States v. Walker*, 817 F.2d 461, 463 (8th Cir. 1987).

As to Davidson's first contention, "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive modifier normally applies to the entire series." *United States v. Wilkins*, 25 F.4th 596, 600 (8th Cir. 2022) (quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012)). Thus, "as a matter of grade-school grammar, the adverb 'forcibly' necessarily modifies each of the listed verbs that follows it." *Id.* at 601. Moreover, the district court's instruction tracks the language of § 111, which only states "forcibly" once. The district court's instructions thus "adequately advise[d] the jury of the essential elements" of § 111. The district court did not abuse its discretion in not repeating "forcibly" before each verb in the series.

Davidson's argument that the district court abused its discretion in instructing the jury that self-defense was not a defense in this case is similarly unpersuasive. Despite Davidson's contentions, the instructions neither bolstered the Government's

-8-

witnesses nor commented on the evidence. The district court did not abuse its discretion, as it had already determined that self-defense was not available to Davidson and the court wanted to avoid the risk of jurors mistakenly thinking that self-defense was at issue. *See* Fed. R. Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.").

### III.

For these reasons, we affirm Davidson's conviction.

KELLY, Circuit Judge, concurring.

I concur in the court's opinion but write separately to address the issue of self-defense. As the district court noted, this was a difficult case for many reasons, and it suggested that we "take a very hard look at all of the decisions [the court] made, but especially the self-defense decision." In my view, the district court's decisions made prior to the close of evidence, to restrict Davidson's evidence and to prematurely limit the jury from considering self-defense, are ones that warrant a more careful review.

After determining that Davidson had failed to proffer sufficient evidence of self-defense at a pre-trial conference, the district court ruled that "Davidson cannot argue at trial that he acted in self-defense." The district court left open the possibility of revisiting its ruling "if new evidence comes out at trial," for example "during examination of the Government's witnesses." This preliminary ruling and the decision to revisit it during trial was appropriate because it was based on facts proffered to the court, not on the actual evidence as it came in at trial.

However, the pre-trial ruling also expressly prohibited Davidson from introducing at trial "any evidence related *solely* to a self-defense argument"—

including his own testimony—on grounds that it was "irrelevant and thus inadmissible." A defendant's right to testify may be limited by a district court's discretion to "'accommodate other legitimate interests in the criminal trial process,' including well-established rules of evidence," such as relevance. See United States v. Evans, 908 F.3d 346, 354–55 (8th Cir. 2018) (citations omitted). But a defendant has a constitutional "right to present his own version of events in his own words." See Rock v. Arkansas, 483 U.S. 44, 51–52 (1987) (citation omitted). Here, Davidson's version of events about the activities on Lee Street leading up to the shooting—a version that included his belief that he was acting in self-defense at the time—was relevant to the charges against him. Cf. Evans, 908 F.3d at 354 (affirming limitation on defendant's testimony because "negative feelings about his legal team and the criminal-justice system had nothing to do with" the robbery or carjacking charges against him). Indeed, the government asked him questions on cross-examination about those very activities. Relying on its pre-trial ruling, the district court unduly narrowed Davidson's testimony at trial.

The anticipatory pre-trial ruling also prevented Davidson from introducing witness testimony and evidence during trial that would support his theory of defense. Davidson just needed more than "[a] mere 'scintilla of evidence'" to warrant a jury instruction on self-defense, and to then shift the burden to the government to disprove his defense beyond a reasonable doubt.[3] See Hall, 46 F.3d at 857 (citation omitted). As the district court acknowledged, the defendant's "burden of production in self-defense cases is pretty low." See also United States v. Scout, 112 F.3d 955, 960 (8th Cir. 1997) ("The burden on the defense to demonstrate that there is sufficient evidence to warrant an instruction [on self-defense] is not onerous."). It is not unrealistic to think, depending on how the evidence came in, that Davidson may have been able to meet this particularly low burden.

---

[3]If, at the close of evidence at trial, Davidson had still failed to meet his burden of production by offering no more than a "scintilla of evidence," then there would be no need to include in the final jury instructions—as the district court did—that "self-defense is not a defense in this case."

The district court also gave a mid-trial limiting instruction that restricted Davidson's defense even further. When Davidson testified briefly about his "run-in" with Omar two days prior to the incident, and that he thought Omar was returning to harm him, the district court determined it "ha[d] to give [a] limiting instruction" for the jury not to consider self-defense as a matter of law.[4] But, as with its pre-trial ruling, it did so before all the evidence had been presented, when there was still a possibility that evidence to support Davidson's defense might be introduced into the record. Instead, the district court's limiting instruction was based entirely on the pre-trial proffer.

Despite my concerns, however, I concur in this court's judgment to affirm. Davidson challenges the district court's decision to address the self-defense issue pre-trial as a procedural matter and I see no error in that decision. A preliminary ruling on the proffered evidence gave both parties an opportunity to adjust their trial strategy accordingly. But there was no basis for the district court to use its preliminary ruling to limit Davidson's testimony or his ability to cross-examine witnesses at trial without knowing precisely what evidence would come in or how it would be introduced. If all the evidence presented were just the same as that presented in the pre-trial proffer, and irrelevant to the elements of the offense, then the district court's pre-trial ruling would become final, and the jury would not be permitted to consider self-defense. The preliminary ruling, however, was not a reason to keep otherwise relevant evidence from being presented to the jury. Nevertheless, I see no reversible error. Davidson has not identified specific testimony or evidence that he was precluded from presenting to the jury that would have been sufficient to meet his burden of production for the submission of a self-defense instruction. And as to intent, Davidson argues that any evidence excluded from the record was relevant only to whether he had the intent to shoot at federal

---

[4]The court instructed: "Jury, you are instructed as a matter of law that self-defense is not a defense in this case. The testimony you have just heard can be considered by you for other purposes regarding intent, but not for self-defense."

officers—which was not an element of the offense, see Feola, 420 U.S. at 684—not to whether he had the intent to commit assault.[5]

––––––––––––––––––––––––––––––––

––––––––––––––––––––––––––

[5]Even assuming there was insufficient evidence to argue self-defense to the jury—as presented in the pre-trial proffer or during trial—the government still had to prove Davidson "voluntarily and intentionally" attempted or threatened to assault "the person of another." See also 18 U.S.C. § 111(a)(1) and (b). The district court's ruling had the effect of limiting Davidson's ability to present all evidence relevant to his lack of intent to assault, and specifically *why* he shot at the back bumper of the SUV and then fired shots in the air—which, according to him, was a warning to the SUV not to return to his property. Davidson's testimony alone may not have been sufficient to support his requested self-defense instruction, but that does not necessarily mean it was "irrelevant and thus inadmissible" for purposes of his intent.