# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3325
_____

United States of America

*Plaintiff - Appellee*

v.

Deshonte Antwon Dickson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: September 23, 2024
Filed: January 31, 2025
_____

Before COLLOTON, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.
_____

LOKEN, Circuit Judge.

A March 2017 Superseding Indictment charged Deshonte Antwon Dickson, Vernon Curry, David Taylor, and Zachariah Boelter with conspiracy to distribute heroin and methamphetamine. Taylor and Boelter pleaded guilty to participating in this conspiracy. Curry pleaded guilty to a different conspiracy charge. At Dickson's trial in July 2021, Boelter testified for the government, Curry testified for the defense, and Taylor did not testify. North Dakota resident David Hollingshead pleaded guilty

to a different conspiracy and testified for the government as a cooperating witness. He testified that in 2015 Dickson fronted Hollingshead methamphetamine for resale at a parking lot in Bismarck, returned to California, and mailed Hollingshead an additional four ounces; and that in 2016 Dickson sent Hollingshead multiple packages containing methamphetamine and heroin from the Bakersfield, California area, where Dickson lived, to addresses in Bismarck. The jury convicted Dickson of conspiring to distribute heroin and between 50 and 500 grams of methamphetamine.

To calculate drug quantity for Dickson's base offense level, the Presentence Investigation Report ("PSR") counted only the drugs found in a single package intercepted in August 2016, 72.98 grams of heroin and 310.04 grams of methamphetamine. This produced a base offense level of 26, see USSG § 2D1.1, resulting in an advisory guidelines sentencing range of 63 to 78 months imprisonment. The government did not object to the PSR drug quantity finding or to the guidelines range calculations but observed in a sentencing memorandum that "the drug quantity was likely higher." At sentencing, the district court[1] varied upward from the advisory guidelines range and sentenced Dickson to 120 months imprisonment, finding that Dickson was "not a minor participant but, rather . . . . an essential cog in the drug conspiracy."

On appeal, we affirmed Dickson's conviction but remanded for resentencing. United States v. Dickson, 70 F.4th 1099 (8th Cir. 2023) (Dickson I). In rejecting Dickson's contention that the evidence was insufficient to sustain the conspiracy conviction, we reviewed the offense conduct and trial evidence in detail, concluding that the trial evidence "revealed that Dickson's drug deals with Hollingshead were connected to a larger drug conspiracy involving Dickson, Boelter, Curry, and Taylor," and that evidence tracking multiple packages sent from Bakersfield to North Dakota

---

[1]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

"suggest[ed] one overarching drug dealing conspiracy." Id. at 1104. However, we concluded the district court committed procedural sentencing error when it adopted the PSR and its sentencing guidelines calculations but then varied upward based on contrary facts the court found by a preponderance of the evidence based on its first-hand knowledge of the trial evidence, without providing adequate notice that it was considering an upward variance based on findings contradictory to the PSR. Id. at 1104-06; see USSG §§ 6A1.3(a), 6A1.4.

On remand, there were no changes to the PSR. The advisory guidelines sentencing range remained 63 to 78 months imprisonment. Two months prior to resentencing, the district court gave the parties notice it was again contemplating an upward variance "based upon the evidence as admitted at trial (and not the Presentence Investigation Report) that the Defendant was an essential cog in the conspiracy." This remedied a prior procedural error. Prior to the resentencing hearing, the parties submitted sentencing memoranda and the court received letters of support from members of Dickson's extended family. At the hearing, no further evidence was submitted. The district court adopted the PSR "[i]nsofar as it is not inconsistent with the additional findings I will make on the record here today." The government again urged a top-of-range sentence, 78 months imprisonment. Dickson urged a sentence of 63 months imprisonment. After lengthy argument by defense counsel, the district court varied upward and again imposed a sentence of 120 months imprisonment. The court explained:

> The guideline range in this case . . . does not encompass the entire picture of what I heard during the course of the trial. And that is that Mr. Dickson was an essential cog to this drug conspiracy.
>
> And, therefore, I'm going to vary upward from the Sentencing Guideline range for the following reasons: Under 18 U.S.C. 3553(a), an upward variance is appropriate when I consider the nature and circumstances of the offense of the defendant. Mr. Dickson was

involved in a drug conspiracy where he mailed drugs from Bakersfield, California, to North Dakota. Mr. Dickson drove to North Dakota to collect the money from the drug proceeds and rented a vehicle for a codefendant. Again, it indicates he is an essential cog in this drug conspiracy.

The transportation of drugs is, quote, "a necessary part of illegal drug distribution," according to United States versus Martinez, 168 F.3d 1043 from the Eighth Circuit of 1999. Role in the offense, not only did Mr. Dickson ship the drugs from California, he came here to collect the money. He rented a vehicle to travel from California to Bismarck on five separate occasions. He rented hotel rooms twice. He rented vehicles for David Taylor to use to collect in drug debts. In this sense, Mr. Dickson was not a minor participant. He was in a managerial and central role in this drug conspiracy.

I heard it myself during the trial. Seven packages were sent to Mr. Boelter, a codefendant, from Bakersfield between May of 2016 and August of 2016. An additional 17 packages were sent from Bakersfield to an address in Dickinson. There's also a record of one package from Bakersfield to David Hollingshead who was indicted in a separate conspiracy. And so considering the nature and circumstances of the offense, an upward variance is appropriate here.

Dickson appeals, again arguing that the district court procedurally erred and his sentence is substantively unreasonable. "We review a district court's sentence in two steps, first reviewing for significant procedural error, and second, if there is no significant procedural error, we review for substantive reasonableness." United States v. Ayres, 929 F.3d 581, 582-83 (8th Cir. 2019). A deferential abuse-of-discretion standard generally applies to our review of these sentencing issues. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). We affirm.

# I. Procedural Error

Dickson argues the district court procedurally erred in varying upward and imposing a 120-month sentence. Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." Feemster, 572 F.3d at 461 (quotation omitted). Dickson argues the court made two types of procedural error when it varied upward based on findings that "contradicted the ones that it made by adopting the PSR's guidelines calculations." The court erred either "by failing to properly calculate the applicable Guidelines range or, having properly calculated the Guidelines range . . . by basing its sentencing determination on 'clearly erroneous facts.'"[2]

**A. The Guidelines Range.** In Dickson I we noted that the district court's findings relating to drug quantity and Dickson's role in the conspiracy offense

> are inconsistent with *court-adopted* PSR findings -- that Dickson was accountable for only one transaction and recommending no role-in-the offense adjustment.

---

[2]The government argues we must review the alleged procedural errors for plain error because, in Dickson's colloquy with the district court at resentencing, he failed to object to the adequacy of the district court's sentencing explanation of the sentence imposed, as we required in United States v. Vaughn, 519 F.3d 802, 804 (8th Cir. 2008), cert. denied, 555 U.S. 1139 (2009). After careful review of the resentencing hearing transcript -- in particular, questions raised by defense counsel immediately after the district court announced its sentence -- we disagree. The alleged procedural errors argued on appeal were adequately preserved for appellate review under our controlling en banc decision in United States v. Pirani, 406 F.3d 543, 549 (8th Cir.), cert. denied, 546 U.S. 909 (2005).

The PSR's findings may have been influenced by the jury's drug quantity verdict, which the district court was not obligated to follow if it found by a preponderance of the evidence that Dickson played a central role in the conspiracy and was responsible for conspiring to distribute drug quantities the jury found were not proven beyond a reasonable doubt.

70 F.4th at 1105-06 (emphasis added) (citations omitted).

On remand, the district court remedied this procedural error when it adopted the PSR only "[i]nsofar as it is not inconsistent with the additional findings I will make on the record here today." Thus, the court did not, as Dickson argues on appeal, make findings that "contradicted the ones that it made by adopting the PSR's guidelines calculations." If *the court's findings* were not clearly erroneous, there was no "guidelines range" error. Dickson complains that the court did not recalculate the guidelines range by increasing the drug quantity used to calculate Dickson's base offense level and applying an offense-level enhancement, an option we referenced in Dickson I, 70 F.4th at 1106. But he cites no case holding that this procedural option *must* be followed. We doubt one exists because the sentencing court has discretion to vary from whatever guidelines range is determined. It need not take two steps when only one is needed. Thus, the only alleged procedural error properly before us is whether the district court based its sentencing determination on clearly erroneous facts.

**B. The Alleged Clearly Erroneous Facts.** Dickson's Brief on appeal properly notes that we generally review a district court's sentence for abuse of discretion. But he ignores the distinct question of the standard of review when the alleged procedural error is "selecting a sentence based on clearly erroneous facts." The government likewise asserts, with no supporting citation, that we review a properly preserved claim of procedural error "under an abuse of discretion standard." No help from counsel on an important appellate issue that does not frequently arise.

-6-

When a defendant argues on appeal that the district court erred in overruling his objection to PSR findings on fact-intensive issues such as drug quantity or role in the offense, our review is for clear error. See, e.g., United States v. Harris, 908 F.3d 1151, 1153 (8th Cir. 2018) (drug quantity); United States v. Moreno, 679 F.3d 1003, 1004 (8th Cir. 2012) (role in the offense). "If the district court chose a permissible view of the evidence, its holding is not clearly erroneous." Id. We conclude the clear error standard likewise applies when, as here, the alleged "clearly erroneous facts" were not found in the PSR, or contradict PSR facts the district court did not adopt based on its superior view of the evidence gained from trying the case.

In determining drug quantity by a preponderance of the evidence in a drug conspiracy case, the district court may consider amounts from drug transactions in which the defendant was not directly involved if they were made in furtherance of the conspiracy and were known or reasonably foreseeable to the defendant. See United States v. Escobar, 909 F.3d 228, 246-47 (8th Cir. 2018); cf. United States v. Johnson, 75 F.4th 833, 846 (8th Cir. 2023) ("The court's approximation [of drug quantity] may be based on imprecise evidence so long as the record reflects a basis for the court's decision."). Though the jury found that Dickson did not conspire to distribute 500 or more grams of methamphetamine, "an acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." United States v. Ruelas-Carbajal, 933 F.3d 928, 930 (8th Cir. 2019) (quotation omitted).

In justifying an upward variance at Dickson's first sentencing, the district court cited facts relating to Dickson's role in the conspiracy offense that were not included in the PSR -- his involvement in transporting an additional twenty-five drug packages from California to North Dakota, renting vehicles for a co-conspirator who traveled to North Dakota, traveling himself to North Dakota on five occasions, and collecting

drug debts. Dickson I, 70 F.4th at 1105.[3] As reflected in the district court's above-quoted explanation, its decision to impose the same upward variance at resentencing was based on these same facts, applying the § 3553(a) sentencing factors.

On appeal, Dickson takes issue with the district court's view of the trial evidence. He views the record from the perspective of the PSR's more limited findings and repeats insufficient-evidence arguments we rejected in Dickson I. Regarding his "supposed managerial role," Dickson argues "[t]he only facts identified by the court . . . were (1) 'He rented hotel rooms twice' and (2) 'He rented vehicles for David Taylor to use to collect in drug debts.' . . . [It] is unclear how these things could possibly lead any rational jurist to the conclusion that Dickson had any sort of managerial role." This contention is without merit. First, we are reviewing the district court's fact-findings for sentencing purposes, not whether a "rational jurist" would make those findings after a trial. Second, we are not reviewing whether "Dickson had any sort of managerial role," though the district court found that he did. That is a role-in-the-offense guidelines determination and the court did not impose a role-in-the-offense enhancement. We are reviewing different questions -- whether the district court clearly erred in finding that Dickson was "an essential cog in this drug conspiracy" and in determining that this finding warranted an upward variance based on the § 3553(a) statutory sentencing factors. After careful review of the sentencing and resentencing records, we conclude there was no procedural resentencing error.

---

[3]In addition to the single package of heroin and methamphetamine used for its guidelines calculation, the PSR noted that Dickson "was found to be sending packages of drugs to North Dakota."

## II. Whether the Sentence Is Substantively Unreasonable

We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard. "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." Feemster, 572 F.3d at 461 (quotations omitted). It is "the unusual case when we reverse a district court sentence -- whether within, above, or below the applicable Guidelines range -- as substantively unreasonable." Id. at 464 (quotation omitted). "When a district court varies from the guidelines range based upon its application of § 3553(a), we consider both whether the district court's decision to grant a variance is reasonable and whether the extent of the variance is reasonable." United States v. Levy, 18 F.4th 1019, 1023 (8th Cir. 2021) (quotation omitted).

Dickson argues the district court abused its discretion and imposed a substantively unreasonable sentence because "it gave improper weight to its determination that Mr. Dickson should receive a sentence greater than that received by co-defendants Zachariah Boelter and David Taylor." Dickson raised this issue in his initial appeal. We did not reach his argument because we remanded for resentencing. Dickson I, 70 F.4th at 1106 n.1.

The § 3553(a) statutory sentencing factors direct federal sentencing courts to consider "(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Taylor and Boelter were sentenced by a different district judge prior to Dickson's initial sentencing. Taylor, who pleaded guilty but did not cooperate, was determined to have an offense level of 25 and 9 criminal history points, resulting in an advisory guidelines range of 84 to 105 months imprisonment; he was sentenced to 72 months imprisonment. Boelter, who cooperated and testified for the government at Dickson's

trial about extensive drug dealings with Taylor and Curry, was determined to have an offense level of 34 and 18 criminal history points, resulting in an advisory guidelines range of 262 to 327 months; he was sentenced to 80 months imprisonment.

Dickson argues the district court created unwarranted sentencing disparities by giving him a substantially greater sentence than these co-conspirators, despite the fact that Dickson had 0 criminal history points and an offense level of 26. Boelter, who did cooperate, received an 80-month sentence despite his lengthy criminal history and extensive involvement in the conspiracy, "a truly extraordinary benefit for his cooperation." Taylor, who did not cooperate, received a one-year downward variance from an advisory range that already took into account his guilty plea and acceptance of responsibility. Dickson received an above-range sentence despite having a lower offense level and fewer criminal history points than these co-conspirators.

As we have repeatedly explained, the statutory directive to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct "refers to *national* disparities, not differences among co-conspirators." United States v. Baez, 983 F.3d 1029, 1044 (8th Cir. 2020) (quotation omitted), cert. denied, 141 S. Ct. 2744 (2021); see United States v. Merrett, 8 F.4th 743, 753 (8th Cir. 2021). "When a single defendant asserts on appeal that a similarly situated co-conspirator was sentenced differently, and both sentences are within the range of reasonableness, there is no principled basis for an appellate court to say which defendant received the 'appropriate' sentence." United States v. Fry, 792 F.3d 884, 893 (8th Cir. 2015); see United States v. McElderry, 875 F.3d 863, 865 (8th Cir. 2017).

Disparities between the sentences of co-conspirators are certainly not irrelevant, but "[i]t is not an abuse of discretion for a district court to impose a sentence that results in a disparity between co-defendants when there are legitimate distinctions between the co-defendants." United States v. Arnold, 835 F.3d 833, 842-

43 (8th Cir. 2016) (quotation omitted). In rejecting Dickson's contention, the district court noted important distinctions between Dickson and his co-conspirators. Both pleaded guilty and received acceptance of responsibility reductions. While their criminal histories were more extensive, Dickson played a more prominent role in the conspiracy than the jury verdict reflected. And Boelter's cooperation and testimony as a key witness assisted the government in stopping continued drug activity.

"In our circuit, relief based on a comparison to co-conspirators is an unusual circumstance." Merrett, 8 F.4th at 753 (cleaned up) (quotations omitted). In the one published case where we granted such relief, there was "an extreme disparity in sentencing between similarly situated conspirators, and a consolidated appeal involving both conspirators that permitted a remand for resentencing of both parties." Fry, 792 F.3d at 892-93 (quotation omitted). Here, there is no consolidated appeal. "As the sentencing records of [Dickson's] co-defendants are not before us, we are not in a position to evaluate his claim of unwarranted disparities." United States v. Hill, 8 F.4th 757, 761 (8th Cir. 2021). The lack of a consolidated appeal precludes a determination whether apparent disparities are justified by the co-conspirators' different roles in what in this case was an extensive overarching conspiracy, which would mean they were not "found guilty of similar conduct." In these circumstances, there was no abuse of the district court's substantial sentencing discretion.

The judgment of the district court is affirmed.

_____