# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-2152
_____

United States of America

*Plaintiff - Appellee*

v.

Laindrell Myquail Cooper, also known as Kuddo

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern
_____

Submitted: April 17, 2026
Filed: May 19, 2026
_____

Before SMITH, BENTON, and ERICKSON, Circuit Judges.
_____

BENTON, Circuit Judge.

Laindrell Myquail Cooper pled guilty to possessing ammunition as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). The district court[1] sentenced him

_____

[1]The Honorable C.J. Williams, Chief Judge, United States District Court for the Northern District of Iowa.

to 160 months in prison.  He appeals.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

On November 18, 2022, Quintorey Kemp was in downtown Waterloo, Iowa. Kemp, a member of the "Only the Brothers" (OTB) gang, often carried a firearm and had been in multiple shootings.  Law enforcement called him a "known shooter." At a downtown barbershop, Kemp confronted Andrew Spates and Keivon Anderson, members of the rival gang "All About Action" (ABA), flashing his firearm.  Kemp then sat in a car outside the barbershop.

Learning of the confrontation, Cooper, also an ABA member, left for the barbershop, driven by Ariouna Brown.  He wore all-black clothing and a face mask showing only his eyes.  He asked to be dropped off at a parking garage a block and a half from the barbershop.  Traffic cameras showed him looking around as he walked to the barbershop.

Arriving, Cooper entered and then exited the barbershop.  Brown's car was waiting outside.  Anderson walked to the car and opened the back door.  But Cooper did not get in.  Kemp exited his car and walked to the sidewalk.  Spates and Anderson saw him, pointed to him, and then took cover.  Kemp had a firearm in his hand, shielded from Cooper's view.  Cooper walked to the middle of the street, with buses between him and Kemp.  When Cooper was at the back of the second bus, Kemp crouched behind a pickup truck and then turned to run.  Cooper came around the bus, firing with a high-capacity magazine at Kemp as he fled.  Kendrick Brown, Kemp's cousin who was also at the scene, began firing at Cooper.  But Cooper continued to pursue Kemp.   Kemp fled towards a storefront vestibule.  Cooper continued firing, then fled into an alley.

Cooper was charged with one count of possession of a firearm by a prohibited person and one count of possession of ammunition by a felon. He pled guilty to the second count and now appeals.

## II.

Cooper asserts his conviction under 18 U.S.C. § 922(g)(1) is facially unconstitutional under the Second Amendment. This argument is foreclosed by binding precedent. *See United States v. Cunningham*, 114 F.4th 671, 675 (8th Cir. 2024) ("The longstanding prohibition on possession of firearms by felons is constitutional."); *United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024) (holding "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)").

## III.

Cooper believes the district court erred by cross-referencing U.S.S.G. § 2A2.1(a)(2), the attempted murder provision, in calculating his base offense level because the evidence shows Cooper acted in self-defense. This court reviews "the district court's findings of fact for clear error and its application of the Sentencing Guidelines de novo." *United States v. Burling*, 420 F.3d 745, 749 (8th Cir. 2005). "If the district court chose a permissible view of the evidence, its holding is not clearly erroneous." *United States v. Dickson*, 127 F.4th 722, 728 (8th Cir. 2025).

U.S.S.G. § 2K2.1 determines the base offense level for a defendant—like Cooper—who unlawfully possesses ammunition. But the guidelines direct the court to apply the offense-level calculation for a different offense, if the defendant used the ammunition "in connection with the commission or attempted commission of another offense." *United States v. Clark*, 999 F.3d 1095, 1097 (8th Cir. 2021), *citing* **U.S.S.G. § 2X1.1(c)(1)**. *See* **U.S.S.G. § 2K2.1(c)(1)(A)**.

U.S.S.G. § 2A2.1 covers attempted murder. Under federal law, murder is "the unlawful killing of a human being with malice aforethought." **18 U.S.C. § 1111(a).** Malice aforethought means "an intent, at the time of a killing, willfully to take the life of a human being, or an intent willfully to act in callous and wanton disregard of the consequences to human life." *United States v. Comly*, 998 F.3d 340, 343 (8th Cir. 2021), *citing* **Eighth Circuit Manual of Model Jury Instructions (Criminal)** § 6.18.1111A-1 (2018).

The district court applied the § 2A2.1(a)(2) cross-reference after finding—by a preponderance of the evidence—that Cooper attempted to murder Kemp. Viewing the video from a traffic camera, it made detailed findings that Cooper did not see Kemp with a weapon and instead came to the scene with the premeditation to shoot him:

> When we focus on what's visible to the defendant here and what he knew, the facts work very differently. So I'm looking at 2 minutes and 21 seconds. This is when Kemp is out of the truck, and it looks for the first time perhaps he is pulling something in his right hand. He is bladed. His body is bladed. He is standing behind the full-size extended cab pickup truck that looks to be almost as tall as he is. And to the extent he's holding a firearm, the firearm is down low. Clearly not visible to the defendant, it appears to me, from the angle he has looking at Mr. Kemp.

> The other thing I note is, maybe, just maybe, at this point, at 2:21, the first time that maybe you can see Kemp with a gun, the defendant has some view between the buses that may give him some glimpse of the front of the truck, but the angle, to me, looking across there, the defendant is in the shadow of the second bus already, and it appears to me that it's very likely that he cannot even see Kemp at this point.

> Advance to 2:22 please. So at 2:22, we can see now the shadow of the bus is now advanced by 2 or 3 feet down the road. The defendant appears to be looking up the road, not even across, through the bus or at the bus. And Mr. Kemp is again blocked by the truck. And to the extent he has a gun out at all, he's bladed. To the extent that there was

-4-

argument that Anderson and Spates saw Kemp and pointed at him and saw that he had a gun, the bus blocks their view. There's absolutely no way from where they're at that they can see through the bus and see Kemp holding a gun when it's—to the extent he's holding it, it's down low. It's below the truck and it's between it and the bus and Anderson and Spates. So I'm not buying that.

I don't need to see the rest, but as you continue to play it, the defendant never attempts to get in the car. There's never an attempt for him to get into the vehicle. This is not a reaction where he's attempting to get in the vehicle, suddenly Anderson and Spates say, "Oh, my gosh! Kemp has a gun! He's pointing it at us!" and only in response to that does he abandon getting in the car and decide he's going to shoot at him.

What this looks like to me instead is that the defendant fully intended to go after Kemp from the beginning. There is a lot of premeditation to this. He intentionally came to this location heavily armed. He came to the location and was dropped off a couple blocks away so he could sneak up on the location. He came to the location wearing black with a full mask.

This is not during the pandemic. Nobody else in this photograph is wearing a mask. The only reason you wear a mask at this point is to disguise his identity. The defendant then intentionally walks down behind the bus. So I disagree with the defense contention that if he really intended to shoot at Kemp, he would have done it to begin with.

No. What he is doing is what he is intending to do and that is to use the bus as a way of sneaking around to the side of the bus and the back end of it so he can come up on Kemp from behind and shoot at him.

Even if—even if I were to stretch this, which I think the facts simply cannot support, to the idea that the defendant saw Kemp with a firearm, Kemp never raised the firearm. He never pointed the firearm at the defendant. He never discharged the firearm. He didn't point it at the defendant. He didn't point it at Spates. He didn't point it at Anderson. He didn't point it at anybody. The gun, to the extent he has one, is pointed to the ground the entire time he has the gun. He then

puts it either back behind his satchel or in the satchel. And until he's being shot at and is running away, he doesn't pull the gun out again. And even when he pulls out the gun again, it's pointed to the ground and he is running for his life.

Cooper shot repeatedly at Kemp, demonstrating that he had the specific intent to kill. *See United States v. Angel*, 93 F.4th 1075, 1079 (8th Cir. 2024) ("Angel fired five shots at Woodland and Fisher, hitting Fisher. The district court, relying on *Greer*, did not clearly err in finding Angel had a specific intent to kill."); *United States v. Greer*, 57 F.4th 626, 630 (8th Cir. 2023) (holding that "shooting at a particular person, or a group of people, demonstrates a specific intent to kill").

Cooper argues he "acted in self-defense" and, therefore, "did not have the required intent to kill." Self-defense is an affirmative defense to attempted murder. *Angel*, 93 F.4th at 1079. Under federal law, "If a person reasonably believes that force is necessary to protect himself or another person from what he reasonably believes to be unlawful physical harm about to be inflicted by another and uses such force, then he acted in self defense." *United States v. Farlee*, 757 F.3d 810, 815 (8th Cir. 2014). "However, self defense which involves using force likely to cause death or great bodily harm is justified only if the person reasonably believes that such force is necessary to protect himself or a third person from what he reasonably believes to be a substantial risk of death or great bodily harm." *Id*. at 817. "Fear that another might employ deadly force, without any action by the other to support that fear, is insufficient to create a reasonable belief of imminent danger." *United States v. Davidson*, 108 F.4th 706, 711 (8th Cir. 2024). Knowledge or belief that another person has a firearm is not alone sufficient to support a claim of self-defense. *See Angel*, 93 F.4th at 1080 (rejecting claim of self-defense where alleged aggressor previously flashed a gun but was walking away when the defendant confronted him).

Cooper contends the court should apply Iowa, not federal law, to his self-defense claim. This court need not decide the issue because he cannot claim self-defense under either. Similar to federal law, Iowa law states that "A person is justified in the use of reasonable force when the person reasonably believes that such

force is necessary to defend oneself or another from any actual or imminent use of unlawful force." **Iowa Code Ann. § 704.3**. Reasonable force means "force and no more which a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss and can include deadly force if it is reasonable to believe that such force is necessary to avoid injury or risk to one's life or safety or the life or safety of another, or it is reasonable to believe that such force is necessary to resist a like force or threat." **Iowa Code Ann. § 704.1(1)**.

Cooper believes he was reasonable to believe that deadly force was necessary to avoid injury or risk to his life or that of another because Kemp was "from a rival gang," had "verbally accosted" his friends and "flashed a firearm," and his friends were pointing at Kemp and hiding behind a car. To begin, the district court found no evidence that Cooper knew of the verbal altercation or that Kemp flashed a firearm:

> The other problem that we have here is a lot of the defense turns on presumptions about what the defendant knew or saw. It's argued that the defendant knew about the threats in the barbershop, knew that Kemp had pulled a gun on his friends, knew that he had made a threat in there. There's no evidence of any of that. It's possible. In fact, it might very well be the case. Spates clearly called the defendant. But I have no evidence of what the defendant knew, no evidence that he knew about any gun that was pulled on anybody. The defendant hasn't provided that testimony, and the government hasn't provided that evidence in its case either.

Even with this information, the district court found Cooper was not acting in self-defense:

> To the extent that Kemp displayed a firearm in the barbershop before the defendant even arrived at the scene, there's no evidence that he pointed it at anybody or he threatened to kill anybody in there. And so there's no immediate risk of harm to anybody, risk of death or serious bodily injury to anybody. And the only person that made a risk

of serious bodily injury or death is the defendant when he decided he was going to treat this as the O.K. Corral and started shooting at people.

. . . .

In America, unfortunately, and in Iowa, unfortunately, anybody can have a gun these days. So the fact that Kemp has a gun is not grounds to shoot him. The fact that he has a gun and even pulls it out is not grounds to shoot him. It doesn't put anybody in danger. It's not a threat to anybody's life.

. . . .

So we're largely speculating on what the defendant knew or saw. We also are largely speculating on what his intent was, and all we can do is conclude from his actions what his intent was. If his actions were to simply get out of there and avoid the confrontation and protect his friends, he would have gotten into the car that he never even attempted to get into.

And the government's right. We don't even have to get that far, because there were a half a dozen different ways the defendant could have reacted to this if he really thought that he or his friends were in imminent danger than to pull a firearm and shoot at a fleeing man. They could have left the scene. They could have gone out the back of the barbershop. They could have gotten into the car and left the location. They could have called the police. They could have done a dozen different things that would have not have resulted in the defendant discharging a firearm multiple times in broad daylight in a city, in public, and trying to kill a man.

Here, the district court did not clearly err in finding defendant was the aggressor. On defendant's first shot, Kemp crouched behind the truck. He remained crouching behind parked cars for a few moments and then he fled with his back turned toward defendant. *See Angel*, 93 F.4th at 1080 (rejecting self-defense claim where defendant followed the alleged aggressor while he was walking away). Kemp

took no action likely to cause death or great bodily harm. *See **Greer***, 57 F.4th at 630 ("That T.R. in fact had a gun in his sweatshirt pocket and no doubt entered the Brady Mart up to no good did not justify Greer's attempt to use deadly force, in the presence of innocent bystanders, before T.R. took any action likely to cause death or great bodily harm.").

Cooper also relies on another provision of Iowa law which provides, "A person may be wrong in the estimation of the danger or the force necessary to repel the danger as long as there is a reasonable basis for the belief of the person and the person acts reasonably in the response to that belief." **Iowa Code Ann. § 704.1(2)**. He argues that Kemp's flashing of his firearm was alone a "threat of deadly force under Iowa law." *See **State v. Crutcher***, 1 N.W.2d 195, 198 (Iowa 1941) (holding that "an actual assault by the victim is not always necessary in order to justify a defendant in using a deadly weapon in self-defense, if the circumstances are such as to cause a reasonable apprehension that an assault is about to be committed"). But, as the district court found, Cooper presented no evidence that he knew Kemp had a firearm or that he saw him flash it. And when Cooper first encountered Kemp, he moved away from him, not toward him.

Finally, Cooper asserts a claim of "imperfect self-defense." "An imperfect self-defense involves the defendant's unreasonable use of deadly force to thwart an assault." *United States v. Milk*, 447 F.3d 593, 599 (8th Cir. 2006). "A defendant can show imperfect self-defense with evidence that '(1) the defendant unreasonably but truly believed that deadly force was necessary to defend himself, or (2) the defendant inadvertently caused the victim's death while defending himself in a criminally negligent manner.'" *United States v. High Hawk*, 121 F.4th 701, 705 (8th Cir. 2024), *quoting **Milk***, 447 F.3d at 599.

But aggressors cannot succeed on a claim of imperfect self-defense. "An imperfect self-defense claim is premised on the view that *some* action was necessary for the defendant to protect himself." ***Milk***, 447 F.3d at 599. In "this case, the evidence, when viewed in the prosecution's favor, showed that it was actually"

Cooper "who initiated the assault with the intention of fighting, hurting, or killing" Kemp. *Id*. This is inconsistent with a self-defense claim, be it a perfect or imperfect one. *Id*.

Overall, the district court found:

> I think the description given by the government that the defendant was hunting down Kemp is an accurate one. The defendant was running after a man who was running away from him with his back turned, discharging multiple rounds at him, trying to kill the man. That is as far from an act of self-defense as you could possibly get.
>
> So my view of the facts is that the defendant did attempt to murder Mr. Kemp.

The court did not err in applying the cross-reference to § 2A2.1(a)(2).

* * * * * * *

The judgment is affirmed.

_____